70311. CONGLETON v. STARLITE SKATE CENTER, INC.
(333 SE2d 677)

BIRDSONG, Presiding Judge.

Premises Owner Liability for Invitee Injuries. The facts necessary for consideration and disposition of this appeal show that in May 1983, Starlite Skate Center operated a skating rink. It opened prior to 7:00 p.m. for the convenience and pleasure of its customers. Robert Congleton is a 12-year-old male who utilized the rink for personal pleasure.

The rink maintained a side room off of the skating floor for purposes of skate storage and changing shoes to skates and vice versa. The rink had floor guards and a manager to control the premises. There also was a rule that people using the changing room could only go into the side room long enough to change skates or shoes and could not loiter in the side room. The changing room was an L-shaped room with a door at the long end of the "L" exiting onto the skating floor. One standing in the door to the changing room could not see into the area of the room represented by the foot of the "L."

The ceiling of the changing room was a drop ceiling of acoustical type tile squares. These tiles were suspended from the ceiling by metal bars. A row of tiles was suspended by two angle bars twelve feet long intersected every twelve inches by a cross angle bar. Thus, the tiles themselves furnished support so that the intersecting angle bars could not move. The intersecting angle bars hooked over the rim of the twelve-foot support by an I-shaped projection. Thus, if a tile was removed from the ceiling and no longer furnished rigid support for the intersecting angle bar, the shorter bar could move to the side and fall from the ceiling. There was testimony however that the ceiling tiles were wholly static and could not move unless tampered with or by deliberately removing in order to reach through the tiles for a purpose such as working on heating or electrical equipment.

On the evening of the injuries suffered by Robert Congleton, it was shown that Robert went to the rink to play electronic games and to skate. He and a friend went into the changing room and put on skates. At that time (8:00 p.m.), Robert noted nothing amiss in the room. However, at about 7:30 p.m. a young girl patron had gone into the changing room and observed two young (ten to twelve-year-old) boys standing on benches and punching with something at the tiles in the ceiling in the base of the "L" part of the room. She saw that one of the tiles had been partially moved.

Robert and his friend skated around the rink a couple of times at

about 8:30 p.m. and went back into the changing room to take off their skates. They then went back to play some more electronic games. About 9:00 p.m. Robert and his friend went back to the changing room to put back on a pair of skates. This time Robert noticed that a tile had been moved in the back portion of the changing room and that a short support angle bar was protruding a few inches from the ceiling tiles. Also some tile scraps were on the floor under the hole in the drop ceiling. On this visit the manager of the rink came to the door to the changing room to remind the boys they could not remain in the room but to change their shoes into skates and vacate the room. It is not disputed that the manager could not see into the base of the "L" shaped changing room and thus could not see the missing tile, the slightly protruding angle bar, nor the debris on the floor. Moreover, it is not disputed that no one ever told the manager of the missing tile.

After a few more turns around the floor, Robert re-entered the changing room once more to change his skates. He entered with several other young persons. At least two of the persons saw that one end of an angle bar had dropped from the suspended ceiling but the other end was still caught in the twelve-foot support bar. Thus the angle bar hanging down was at about head level. Robert called out to a friend and when the friend answered, Robert turned and walked toward the location of the friend which was in the base of the L-shaped room. Robert stated he was not looking for and did not see the projecting angle bar although he conceded the angle bar was clearly visible to anyone looking. The sharp "I" projection on the end of the bar cut Robert's cheek and neck sufficiently severely to require approximately 50 sutures and to cause a permanent scar. Robert's father brought suit as next friend on behalf of Robert and presented essentially the above evidence. At the conclusion of the plaintiff's evidence, Starlite Skate Center moved for directed verdict which was granted by the trial court. It is the grant of the directed verdict that forms the basis of this appeal. *Held*:

The basis for Robert Congleton's complaint rests in the failure of the manager to conduct an inspection of the changing room to insure its safe condition while the manager was at the door ordering the boys to leave the changing room, such duty being called into exercise by the presence of tile debris on the floor, a tile being out of the drop ceiling for approximately an hour before Robert was injured as augmented by the fact that the rink catered to children and was under a higher duty to maintain a safe premises.

At the risk of redundancy, we restate the general rule in cases such as this to be that the proprietor's liability is based upon his superior knowledge and the absence of such knowledge by the invitee. If the invitee knows of the condition or hazard, there is no duty on the

proprietor to warn the invitee and there is no liability for a resulting injury because the invitee has as much knowledge as (if not more than) the proprietor. By voluntarily acting in view of or in spite of his knowledge, the invitee assumes the risks and dangers incident to the known condition. We concede that the duty to exercise ordinary care for the safety of an invitee is greater where the latter is a child of tender years. Even so the proprietor is not an insurer of the safety even of a child. Usually therefore a proprietor is not liable for injuries resulting solely from misuse of otherwise safe premises by a third party, where such misuse is unknown to the proprietor and is unanticipated by him. See *Belk-Hudson Co. v. Davis*, 132 Ga. App. 237, 239-240 (207 SE2d 528); *Lincoln v. Wilcox*, 111 Ga. App. 365, 368-369 (141 SE2d 765).

There was unrebutted evidence in this case that the ceiling was in a static condition and would present no danger such as that confronting Robert unless deliberately disturbed. Though there was other evidence that tiles had on other occasions been displaced there was no evidence that a support rod had fallen or ever presented a danger. It further is clear that no one ever brought to the attention of the manager or the floor guards that a tile had been displaced on that particular evening. In substance then, so far as the evidence shows, the dangerous condition in the changing room was one not known or reasonably to be anticipated by the proprietor.

Likewise, the evidence amply demonstrated that the management was concerned with safety. There were floor guards on duty. Likewise, there was a house rule that persons using the changing room could not remain or loiter therein. When Robert and his friend were in the room the second time, the manager enforced that rule and reminded the boys that they had to promptly leave the room after changing skates. Thus the only evidence in the transcript pertaining to the management's exercise of its duty to inspect showed that the rink personnel were carrying out their responsibilities. No evidence was offered as to how often or how extensive safety inspections were to be conducted. Accordingly, there is no indication in the transcript that the manager did not exercise his safety responsibilities in a reasonable manner.

In order to establish a right of recovery, Congleton had to show by a preponderance of the evidence that the manager of the rink or any of his agents had actual or constructive knowledge of a defect in the premises and that Robert had no reasonable knowledge of this defect prior to his injury. *Hughes v. Hosp. Auth. of Floyd County*, 165 Ga. App. 530 (301 SE2d 695). In this state there is no duty imposed upon a proprietor to patrol his premises constantly in the absence of a showing that the premises are inherently or unusually dangerous. *Winn-Dixie Stores v. Hardy*, 138 Ga. App. 342 (226 SE2d

142). See *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 155 (256 SE2d 916). To impose a duty on a proprietor to interfere to prevent a potential injury to an invitee before the danger is apparent or known to the proprietor renders the proprietor an insurer, a status specifically and properly rejected by the trial court when considering the motion to direct a verdict.

When it was considering the motion for directed verdict in order for the motion to be granted, it had to be apparent to the trial court that there was no evidence of the presence of a defect for a sufficient length of time to put the management of the rink on constructive notice of a dangerous condition; that the rink had adequate inspection procedures and did not fail to follow the procedures established. Furthermore, the evidence tends to show that Robert could have prevented the injury to himself by a minimum of observation of an apparent danger. Thus, we conclude that Congleton failed in his burden of establishing even a prima facie case of liability by the skating rink. The direction of a verdict is proper where there is no conflict in the evidence as to any material fact and the evidence introduced, with all reasonable deductions therefrom demand a particular verdict. Such is the case here. See *State Farm Mut. Auto. Ins. Co. v. Snyder*, 125 Ga. App. 352 (187 SE2d 878). We discern no error in the grant of a directed verdict to the skating rink under the facts presented by Congleton.

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs in the judgment only.*

DECIDED JULY 11, 1985.

*Edward B. Stalnaker*, for appellant.
*A. Montague Miller, Beverly Carter*, for appellee.