A96A1929. SAGON MOTORHOMES, INC. v. SOUTHTRUST BANK
OF GEORGIA, N.A.
(484 SE2d 21)

JOHNSON, Judge.

Southtrust Bank sued Sagon Motorhomes, a retailer of recreational vehicles, to recover amounts allegedly owed on an account. Sagon appeals from the trial court's grant of summary judgment in favor of Southtrust for the amounts allegedly due.

In 1988, Sagon and Southtrust[1] entered into an agreement (the "main agreement") which enabled Sagon's customers to finance their RV purchases through Southtrust. Sagon would, from time to time, sell to the Bank the "Retail Installment Sales Agreements" Sagon made with its customers.

Pursuant to the main agreement, when the Bank purchased an installment agreement, it would pay to Sagon, up front, the amount of the loan and a portion of the interest which the Bank *expected* to receive over the life of the loan. Of the amount paid to Sagon that represented expected interest, 75 percent would be paid directly to Sagon and 25 percent would go into a "reserve account" set up in the main agreement.[2] The reserve account was assigned to Southtrust "as security for the performance by [Sagon] of all its obligations, warranties, representations and covenants hereunder; . . . and as security for and against any rebates or refunds whatsoever which Bank may make to [Sagon's] customers as a result of any prepayment of any Agreement. Bank may, but is not required to, charge any amounts due from [Sagon] against such reserve account. Bank may

---

[1] The original agreement was entered by Sagon and First American Bank, a predecessor of Southtrust. As Southtrust assumed the rights and obligations under this contract, reference to First American is eliminated for the sake of simplicity.

[2] The precise language of this provision states: "Bank will pay to [Sagon] the 'Amount Financed' and 75% of the excess, if any, of the 'Finance Charge' provided for in the agreement over a retention rate established by the bank from time to time. The balance of the excess or 25% will be deposited and held in a 'Reserve Account' to be established by the Bank."

hold all reserves or any credits due [Sagon] until the liquidation of all Agreements purchased from [Sagon] and other obligations of [Sagon] to Bank are satisfied in full."

The main agreement further stated: "If Bank is required to rebate interest on any Agreement . . . [Sagon] will promptly remit to Bank a pro-rata portion of all unearned charges." A similar provision contained in the assignment clause of each individual installment agreement provided: "In the event [Sagon's customer] prepays the unpaid balance of the Note and is entitled to receive a refund for prepayment then [Sagon] will pay to [Southtrust] in cash a proportionate amount of such refund where [Southtrust] has discounted or advanced funds to [Sagon] on account of any refundable amounts."

Many of Sagon's customers repaid their balances early and refinanced with other institutions. As a result, Southtrust charged against the reserve account amounts representing the interest payments that were made up front to Sagon but were never realized from the borrowers over the life of the loans. Eventually, the reserve account reflected a "negative balance," which Southtrust sued to recover. On Southtrust's motion for summary judgment, the trial court held that because the contract created this "account," Sagon was liable to pay Southtrust any negative balance in the account. Finding the amount of the negative balance to be supported by uncontroverted evidence, the trial court awarded summary judgment to Southtrust in the amount of $69,698.

On appeal from the grant of a motion for summary judgment, we review the record de novo to determine if the moving party has demonstrated there is no genuine issue of material fact and the undisputed facts, construed in a light most favorable to the non-moving party, warrant judgment as a matter of law. *Gentile v. Bower*, 222 Ga. App. 736, 737 (477 SE2d 130) (1996). The construction of a contract is a question of law for the court unless, after the application of the rules of construction, the contract remains ambiguous. *Century 21 &c. v. Cason*, 220 Ga. App. 355, 358 (2) (d) (469 SE2d 458) (1996); *Kennedy v. Brand Banking Co.*, 152 Ga. App. 47, 53 (4) (262 SE2d 177) (1979).

1. Contrary to the trial court's finding, the mere fact that the contract creates a "reserve account" does not mean Sagon is liable for a negative balance in that account. The contract provides only that sums in the "reserve account" were pledged as security which the Bank may charge against. The "account" upon which a suit may be based is an *indebtedness*. See *Gage v. Tiffin Motor Homes*, 153 Ga. App. 704, 706 (1) (266 SE2d 345) (1980). OCGA § 11-9-106 defines an account as any right to payment not evidenced by an instrument or chattel paper. OCGA § 7-4-16 defines a commercial account as "an obligation for the payment of money arising out of a transaction to

sell or furnish . . . goods or services. . . .." Sagon owes Southtrust these sums only if a provision of the contract or another agreement, express or implied, requires Sagon to make these payments.

2. As noted above, the main agreement provided that if Southtrust were required to "rebate" or "refund" any interest, Sagon would pay Southtrust a "pro rata" portion of any "unearned" charges. The assignment clause of each installment contract contained similar language which required Sagon to pay a "proportionate amount" of any "refund" Southtrust had to pay a Sagon customer who repaid a loan early.

Webster's Third New International Dictionary defines a "rebate" as "a return of a portion of the interest on a loan for payment of the loan before its due date." Black's Law Dictionary (6th ed.) similarly defines "rebate" as a "[d]iscount; deduction or refund of money in consideration of prompt payment." In this case, Southtrust's representative testified that all the installment agreements purchased from Sagon were simple-interest loans; therefore, the Bank did not refund or rebate any prepaid interest to any Sagon customer who repaid his or her debt early. As this testimony shows, the condition precedent contained in these clauses did not occur, and no duty of Sagon to repay "unearned" interest was triggered. See generally OCGA § 13-3-4. "When a plaintiff's right to recover on a contract depends upon a condition precedent to be performed by him, he must allege and prove the performance of [that] condition . . . or allege a sufficient legal excuse for its nonperformance." (Citations and punctuation omitted.) *Wolverine Ins. Co. v. Sorrough*, 122 Ga. App. 556, 560 (3) (177 SE2d 819) (1970). Therefore, Southtrust has not shown as a matter of law that these provisions of the contract or assignment clause entitle it to recover "unearned" interest payments made to Sagon.

Furthermore, even if these provisions apply, there is no clear evidence in the record showing the meaning of the terms "*a pro-rata portion* of all unearned charges" or "*a proportionate amount* of such refund." Southtrust's representative testified that the Bank believed that term to mean Sagon was required to repay all "unearned" interest payments. As he acknowledged, however, "I could think of two or three different ways to say prorata." This term is undefined and ambiguous, and no rule of construction can clarify it based on the record before us. Therefore, a question of fact remains on this issue. See *American Communities Corp. v. RIHT Mtg. Corp.*, 195 Ga. App. 101, 102 (1) (392 SE2d 318) (1990).

3. Sagon contends a "non-recourse" provision of the contract prohibits any recovery whatsoever by Southtrust. We disagree. The clause in question provides that "[t]he Agreements purchased by Bank from Dealer hereunder shall be purchased by Bank without

recourse to Dealer, except as may be otherwise specified herein or as set forth in the Assignment of the Agreement." This clause may prevent Southtrust from seeking recovery against Sagon resulting from a default in an installment contract, but it does not prohibit an action based on an alleged violation of the main agreement. See *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (1) (455 SE2d 601) (1995) (contract clear and unambiguous based on plain meaning of words used).

4. The judgment in this case is reversed and the case remanded to the trial court for further proceedings. On remand, evidence showing the course of dealing between the parties may clarify the meaning of these contract provisions. *Toncee v. Thomas*, 219 Ga. App. 539, 541 (2) (466 SE2d 27) (1995). Evidence may also indicate conditions precedent were waived. See id. at 544 (6). As these issues are not before us, we do not address them.

*Judgment reversed and case remanded. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 25, 1997 —
RECONSIDERATION DENIED MARCH 11, 1997.

*Glaze, Glaze & Fincher, Kirby A. Glaze, Thomas M. Conway*, for appellant.

*Goldner, Sommers, Scrudder & Bass, Benjamin D. Ladner*, for appellee.