A97A2079. BORDERS v. BOARD OF TRUSTEES, VETERANS OF FOREIGN WARS CLUB 2875, INC.
(500 SE2d 362)

ELDRIDGE, Judge.

Sixty-seven-year-old Ida Mae Borders filed suit against the Veterans of Foreign Wars Club 2875, Inc. ("VFW") for damages arising out of a fall she sustained at a VFW dance when a fellow invitee, Clarence Hawkins, staggered into her and knocked her to the floor, breaking her foot, leg, and fracturing her hip. In her complaint, Borders asserted that Hawkins was obviously intoxicated, that such intoxication presented a danger to invitees, that the VFW Club knew or should have known of Hawkins' intoxication, and that its failure to remove him from the premises breached its duty to the plaintiff to keep the premises safe for her as an invitee. The VFW moved for summary judgment, which was granted. Here, Borders appeals the trial court's granting of that motion.

The trial court determined that summary adjudication was appropriate because, while Borders may have established constructive knowledge of the hazard on the part of the VFW, there was "no indication that Clarence Hawkins was obviously intoxicated at the Saturday night dance," i.e., the VFW had no *actual* knowledge of the hazard giving rise to a duty to remove it. In addition, the trial court found that Borders did not establish "her ignorance of the danger" so as to preclude her assumption of the risk of injury caused by "the possibility that drunken patrons would be present."

Because (a) the record contains sufficient evidence demonstrating Hawkins' intoxication at the dance, and (b) the VFW failed to present evidence showing Borders had actual knowledge of the specific danger presented by Hawkins, the trial court's granting of summary judgment was error.

1. (a) On summary judgment, a plaintiff may assert a defendant's actual *or* constructive knowledge of a hazard. "Whether defend-

ants are entitled to summary judgment depends upon whether defendants presented sufficient evidence to show they had *neither* actual *nor* superior constructive knowledge of the alleged hazard." (Emphasis supplied.) *Thompson v. Regency Mall Assoc.*, 209 Ga. App. 1, 3 (432 SE2d 230) (1993); *Food Giant v. Cooke*, 186 Ga. App. 253, 254 (366 SE2d 781) (1988). "Constructive knowledge may be inferred where there is evidence that an employee of the owner was in the immediate vicinity of the dangerous condition and could easily have noticed and removed the hazard. Liability based on constructive knowledge may also be established by showing that the owner failed to exercise reasonable care in inspecting the premises [for the hazard]. [T]he burden would be upon [the VFW], as the movant for summary judgment, to show that, as to its lack of constructive knowledge under either theory, no genuine issue remained." *Food Giant v. Cooke*, 186 Ga. App. 253, 254 (1) (366 SE2d 781) (1988); *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428, 429 (408 SE2d 443) (1991).

Here, the record shows that the VFW hires security guards whose task it is to remove intoxicated patrons so they are not a hazard to other patrons. They were in Hawkins' immediate vicinity of the bar and dance floor. In light of this information, the trial court made the factual finding that "Plaintiff may be able to establish Defendant's constructive knowledge of the hazard posed by drunken patrons. There is some evidence that VFW's security guards have ejected intoxicated patrons in the past. . . . There were security guards at the VFW on [that] Saturday night." Accordingly, the trial court's focus on the VFW's *actual* knowledge of Hawkins' intoxication was incorrect. With constructive knowledge, the issue is not what the VFW/security guards *actually* knew, but what they should have known.

In that regard, the record contains testimony from James Wheless, who took Hawkins to the VFW that night. Wheless stated that he picked Hawkins up around 7:00 p.m. to drive to the VFW; that Hawkins had been drinking when he picked him up; that Hawkins drank a beer in the truck on the way to the VFW; that he saw Hawkins drinking beer at the VFW; that Hawkins was removed from the VFW by security guards after Borders' fall; that he found Hawkins intoxicated at Allen's Bar approximately an hour later; and that Hawkins was as intoxicated at the VFW as he was at Allen's Bar. Allen's Bar is "where [Hawkins] hung out at. Cheap brew. Cheap brew."

The pleadings further show that Hawkins only has one half of his stomach and admits that he cannot "handle too much alcohol"; that Hawkins was at the VFW from approximately 7:00 p.m. to 8:45 p.m. before he was ejected after stumbling into Borders; that Haw-

kins purchased alcohol from VFW employees during that time period; that a VFW security guard ejected Hawkins and told Hawkins that he was being ejected because he was intoxicated; that the VFW security guard told Hawkins that he could smell alcohol on Hawkins; and that a VFW security guard told Borders that Hawkins had been ejected because he was intoxicated. The record also contains an admission by Hawkins that he was openly intoxicated at the VFW.

Hawkins' condition of intoxication was such that it was possible for a VFW employee to "smell alcohol" on Hawkins. Further, *prior* to the fall a VFW employee could have noticed the same degree of intoxication that was so apparent to the VFW immediately *after* the fall that the VFW ejected Hawkins from the premises for being drunk and permanently "banned" him from the VFW. The VFW failed to present any evidence to meet its burden on summary judgment to negate constructive knowledge of the hazard as shown by the pleadings and found by the trial court.

Accordingly, the trial court erred in granting summary judgment based on a determination that there was "no indication that Clarence Hawkins was obviously intoxicated at the Saturday night dance." The record contains sufficient evidence of Hawkins' intoxication to put to a jury the question of whether the VFW exercised ordinary care in failing to remove him prior to plaintiff's fall.

(b) "In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Knowledge of the risk is the watchword of assumption of risk, and means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such condition or activities." (Punctuation omitted; emphasis in original.) *Vaughn v. Pleasant*, 266 Ga. 862, 864 (471 SE2d 866) (1996). "It is a plaintiff's knowledge of the *specific* hazard which precipitates the [fall] which is determinative, not merely his knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which he observes and avoids." *Telligman v. Monumental Properties*, 161 Ga. App. 13, 16 (288 SE2d 846) (1982).

Further, "the defendant has the evidentiary burden as to the issue of the plaintiff's negligence after it has been established or assumed for purposes of a motion for summary judgment that the defendant was negligent, i.e., that the defendant had actual or con-

structive knowledge of the existence of a hazard on its premises. Only after the defendant has produced evidence of the plaintiff's negligence does the plaintiff have the burden of producing rebuttal evidence[.]" *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (493 SE2d 403) (1997).

Herein, the VFW presented no evidence demonstrating that Borders had actual knowledge of the danger; understood and appreciated the specific, particular risk of harm associated with such danger; and voluntarily exposed herself to that risk by attending the dance. Borders had no burden to demonstrate she did *not* assume the risk. Accordingly, the trial court erred in determining (1) that Borders' general awareness of "the possibility that drunken patrons may be present" at the VFW gave her equal knowledge of the specific hazard presented by an intoxicated *Hawkins* staggering into her and knocking her to the floor, and (2) that Borders had the burden to negate an assumption of the risk defense prior to such being raised by the VFW through the introduction of evidence.

2. The dissent's Dram Shop analysis is present herein solely because the language of that Act is favorable to the proprietor/defendant. Borders specifically disavows any issue with regard to the Dram Shop Act: " 'The Dram Shop Act' had nothing to do with any theory of recovery asserted by Plaintiff and [ ] the *defendant* was in error in alleging that it controlled this action."

*Judgment reversed. Pope, P. J., Johnson and Blackburn, JJ., concur. Andrews, C. J., Birdsong, P. J., and Ruffin, J., dissent.*

BIRDSONG, Presiding Judge, dissenting.

Borders contends in her brief that the VFW should be liable to her, in part, because "Hawkins was in a state of intoxication which was obvious and noticeable to the VFW Club, and . . . despite this fact the defendant had furnished alcohol to him." This argument amounts to a claim against the VFW for serving alcohol to an obviously intoxicated person with resulting injury to the plaintiff. Borders raised this claim in the trial court and the trial court ruled the "Dram Shop" Act does not apply to this case. Although Borders does not directly attack that ruling in her enumeration of error, she brings up the issue in this court and mixes it in with the negligence issues.

There is no particular duty of a proprietor towards those injured by one to whom he serves alcohol, and there is no general claim for negligence against such a proprietor for serving alcohol. See *Kappa Sigma &c. v. Tootle*, 221 Ga. App. 890 (2) (473 SE2d 213). Such claims are governed by OCGA § 51-1-40, known as the "Dram Shop Act."

OCGA § 51-1-40 (a) acts as a bar to liability of providers of alcoholic beverages except in specified instances. Subsection (a) of § 51-1-40 provides: "(a) The General Assembly *finds and declares that the*

*consumption of alcoholic beverages*, rather than the sale or furnishing or serving of such beverages, *is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person* upon himself or upon another person, except as otherwise provided in subsection (b) of this Code section." (Emphasis supplied.)

Subsection (b) of OCGA § 51-1-40 provides that one who furnishes alcohol to an adult (see *Griffin Motel Co. v. Strickland*, 223 Ga. App. 812, 815 (479 SE2d 401)) shall not be liable for injury caused by that person's intoxication unless the person was "in a state of noticeable intoxication" *and* the provider furnished alcohol to him "knowing that such person will soon be driving a motor vehicle."

The language and spirit of OCGA § 51-1-40 prohibit lawsuits against providers of alcohol except in narrow circumstances, viz., where an underaged person's or a noticeably intoxicated person's *driving of a motor vehicle* causes the claimed injuries or death. OCGA § 51-1-40 (a) and (b).

As the injury in this case was not caused by Hawkins' driving of a motor vehicle, the case does not come within an exception named in subsection (b) to the declaration that an injury is deemed to be caused by the *consumption* of alcohol and not by the furnishing of alcohol. *Ihesiaba v. Pelletier*, 214 Ga. App. 721 (1) (a) (448 SE2d 920). Consequently, there is no causal connection between the actions of the VFW and Borders' injuries.

The only ground on which Borders might seek to hold the defendant proprietor liable for injuries caused by another on VFW Club's premises is founded under OCGA § 51-3-1, which establishes a proprietor's general duty to protect invitees from the injurious consequences of a danger caused by a third person which the proprietor has reasonable cause to foresee. This applies even to criminal acts. See *Confetti Atlanta, Ltd. v. Gray*, 202 Ga. App. 241 (414 SE2d 265); *McCoy v. Gay*, 165 Ga. App. 590 (302 SE2d 130). As to non-criminal but dangerous acts of third parties, including fellow invitees, the owner's liability is based on his reasonable cause to foresee such an incident as sued for by the plaintiff. Thus, the foreseeability to the owner of dangerous conduct must be superior to that of the plaintiff, for if the plaintiff could equally foresee such conduct or act and nevertheless enters onto the premises, she assumes the risks inherent. *Sutton v. Sumner*, 224 Ga. App. 857, 859 (482 SE2d 486); *Atkinson v. Kirchoff Enterprises*, 181 Ga. App. 139 (351 SE2d 477); *Telligman v. Monumental Properties*, 161 Ga. App. 13, 14 (288 SE2d 846). The proprietor is not an insurer of the safety of his guests. *Congleton v. Starlite Skate Center*, 175 Ga. App. 438, 441 (333 SE2d 677). Where a proprietor has no notice of particular dangerous conduct on the part of a guest, he cannot be held liable for injuries to an invitee resulting from such conduct. *Hackett v. Dayton Hudson Corp.*, 191 Ga. App.

442 (382 SE2d 180).

There is no evidence giving rise to a reasonable conclusion that the VFW Club had superior actual or constructive knowledge or of the alleged danger which Borders contends caused her to fall. Further, the trial court found that Borders' testimony in her affidavit as to Hawkins' alleged drunkenness was inconsistent with her deposition testimony wherein she said her only knowledge of his intoxication was "hearsay" from an unnamed security guard. The trial court also found self-contradictory Borders' deposition testimony as to how the incident occurred. Adjudging these inconsistencies against Borders as required in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) and *Gentile v. Miller, Stevenson &c.*, 257 Ga. 583 (361 SE2d 383), the trial court construed Borders' testimony least favorably to her and gave summary judgment to VFW Club.

Although the majority contends that there must have been an employee somewhere nearby who could have smelled alcohol on Hawkins or who could have seen his drunken behavior, there is no evidence to support such speculation. The majority cannot point to any such evidence because there is none. Speculation is not evidence and does not satisfy the requirement of pointing to evidence creating an issue of fact on whether the VFW had constructive knowledge of Hawkins' intoxication. Also, the majority makes much of the VFW's having evicted Hawkins after he fell on Borders, but this proves nothing as to what the VFW knew or should have known before he fell. Further, Borders must show that Hawkins' allegedly drunken condition existed long enough for the VFW to have known of it or that an employee was in the immediate vicinity of Hawkins and could easily have noticed and had him removed from the VFW. See *Deloach v. Food Lion*, 228 Ga. App. 393, 395 (491 SE2d 845). The majority asserts that the VFW "failed to present any evidence to meet its burden on summary judgment to negate constructive knowledge of the hazard" but no such burden exists. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

Accordingly, I respectfully dissent.

I am authorized to state that Chief Judge Andrews and Judge Ruffin join in this dissent.

DECIDED MARCH 20, 1998 —
RECONSIDERATION DENIED APRIL 2, 1998

*Jeffrey G. Gilley, John E. Kardos*, for appellant.
*McLeod, Benton, Begnaud & Marshall, Richard L. Brittain*,

■ ■

*Webb, Carlock, Copeland, Semler & Stair, Dennis J. Webb,* for appellee.