A97A2299. HANSEN et al. v. ETHERIDGE et al.
(501 SE2d 517)

BEASLEY, Judge.

The trial court granted summary judgment to defendants in this wrongful death case. " 'On appeal from the grant of a motion for summary judgment, we review the record de novo to determine if the moving party has demonstrated there is no genuine issue of material fact and the undisputed facts, construed in a light most favorable to the non-moving party, warrant judgment as a matter of law. *Gentile v. Bower*, 222 Ga. App. 736, 737 (477 SE2d 130) (1996).' *Sagon Motorhomes v. Southtrust Bank of Ga.*, 225 Ga. App. 348, 349 (484 SE2d 21) (1997)." *LPS Constr. Co. v. Ga. Dept. of Defense*, 228 Ga. App. 486, 487 (491 SE2d 920).

Jacob Patton stabbed to death 18-year-old Eric Marc Hansen when Hansen attempted to break up a brawl between Patton and another partier, which erupted during a gathering hosted by Sherri Etheridge for her 15-year-old daughter in their apartment. The fatal incident occurred late in the evening at a complex owned by Grisham and Libby ("landlords") and operated by their resident security manager, Clara Libby. When Clara Libby detected alcohol use by teens at the party, observed "a number of beer cans in Ms. Etheridge's apartment" and noticed that the party had "spilled out into the parking lot and was getting loud and out of hand," she told Etheridge to "break up the party." Etheridge said she would and Ms. Libby left the apartment complex on other business. Etheridge asked people to leave, and many did. Forty-five minutes later, plaintiff's son, severely impaired by alcohol, was killed.

Harry Hansen and Elaine W. Hansen, both as Eric's parents and as administrators of his estate, sued the landlords and Etheridge. The Hansens appeal after the trial court granted the defendants' motions for summary judgment.

Pursuant to the principles stated above and those articulated in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), summary judgment in favor of Etheridge and the landlords is proper for three reasons.

First, there is no proximate cause. In OCGA § 51-1-40 (a) the General Assembly declared "that the consumption of alcoholic beverages, rather than the sale or furnishing or serving of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon

another person, except as otherwise provided in subsection (b) of this Code section." Subsection (b) applies only when the drinker will soon be driving a motor vehicle, which is not the case here. This statute insulates providers of alcohol from third-party claims of negligence except as provided in subsection (b). *Kappa Sigma Intl. Fraternity v. Tootle*, 221 Ga. App. 890, 893 (2) (473 SE2d 213) (1996).

Etheridge did not consume alcoholic beverages and cause harm; she served the beverages or allowed them to be served. The landlords neither consumed nor served the alcohol. The only persons concerned with the incident who the evidence showed consumed alcohol at the party were some of the participants in the fight, which intoxication plaintiffs allege led to Eric Hansen's death. The negligence plaintiffs allege against the defendants was the allowance of a party where alcohol was given to underage participants. Because OCGA § 51-1-40 specifically sets forth that only the consumption, not the service of the alcohol, is the proximate cause for injuries inflicted by the intoxicated person, Etheridge and the landlords cannot be liable for Eric Hansen's death, even if the killer were an underage drinker at the party.

Assuming the statute did not preclude a finding of proximate cause, the undisputed facts would. No evidence shows that the killer, Patton, had anything to drink at the party. Bonowitz, who was fighting with Patton, was 27 years old and legally eligible to drink. Eric Hansen, who was under 21 and had drunk, did not stab himself; Patton stabbed him. There is no proximate cause between the act of the sober Patton stabbing Hansen and the underage drinking at the party.

An analogy would be if Eric Hansen had gotten into a car driven by Patton and was killed in an auto accident caused by Patton. Patton's negligence or even malice would not be caused by the underage drinking at the party (he not having drunk), and thus could not be logically connected to the alleged negligence of the landlords and Etheridge in allowing or encouraging the party to continue. This is true even if an intoxicated Bonowitz had scuffled with Patton as he drove; Bonowitz was 27 and eligible to drink. The allowance of underage drinking would not have been the cause.

OCGA § 51-1-18 (a), which gives a right of action to custodial parents against any person for serving alcohol to their underage children, does not apply because Eric Hansen was 18 and no longer a minor. *Burch v. Uokuni Intl.*, 192 Ga. App. 861 (386 SE2d 889) (1989); see *Eldridge v. Aronson*, 221 Ga. App. 662, 664 (1) (472 SE2d 497) (1996) ("recovery by the father pursuant to OCGA § 51-1-18 was barred because his son had attained the age of majority") (citation omitted).

The second reason for affirmance is that Etheridge asked Patton

to leave the party, which he did. Bonowitz and Eric Hansen pursued Patton into the parking lot, at which time Bonowitz and Patton got into a fight that led to the stabbing of Eric Hansen when he tried to break it up. Having asked Patton to leave and having watched him leave her leased premises, what else was Etheridge to do? Was she to make sure that no one from the party followed Patton and provoked a fight somewhere else? Such seems hardly reasonable, for its strains credulity to expect a host under these circumstances to foresee that a nondrinking and uninvited party participant would engage in a malicious stabbing of another party participant off her premises.

The third reason for affirmance is that Eric Hansen voluntarily entered into the fight, albeit as a peacemaker. The cause of action against the landlords is based on premises liability, which requires them to have knowledge of the danger superior to that of the victim. *Robinson v. Kroger Co.*, 268 Ga. 735, 736 (1) (493 SE2d 403) (1997). Where someone inserts himself into a fight, "the superior knowledge must always remain with the combatants, as they, by their voluntary participation, have selected the time, date, and place for the altercation." *Sailors v. Esmail Intl.*, 217 Ga. App. 811, 813 (1) (459 SE2d 465) (1995). Having inferior knowledge, the landlords cannot be held liable.

The cause of action against Etheridge fails on similar grounds. If a guest is "an active participant in a brawl which left him injured," a social host is not liable. *Driver v. Leicht*, 215 Ga. App. 694, 695 (452 SE2d 165) (1994). "Even if a social host is negligent, he is not liable to an injured guest if that guest is . . . an active participant in the sequence of events resulting in his injury. [Cit.]" Id. Etheridge's described actions cannot make her liable for the subsequent death as a matter of law.

For these reasons, summary judgment to Etheridge and the landlords was required.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., and Ruffin, J., concur. Smith, J., concurs in the judgment only. McMurray, P. J., and Eldridge, J., dissent.*

McMurray, Presiding Judge, dissenting.

This wrongful death case represents why Georgia's criminal sanctions against underaged drinking remain ineffective. Contrary to the majority's holding, the facts in this case would authorize a finding that the illegal use of alcohol by teens during an adult sanctioned, but loosely supervised party resulted in the stabbing death of 18-year-old Eric Marc Hansen ("the victim"). I, respectfully, dissent because I believe that such illegal teenage drinking activities pose lethal risks, within a potential realm of legal foreseeability; that a social host may be found liable (by a jury) for damages stemming

from such illegal conduct, but that this liability should only attach if the host is aware of the criminal activity and fails to stop it. See *Moon v. Homeowners' Assn. of Sibley Forest,* 202 Ga. App. 821, 822 (2) (415 SE2d 654). I also believe the same rule should apply if a security provider observes illegal teenage drinking but fails to report the crime to police.

Jacob Patton stabbed and killed the victim when the victim attempted to break up a brawl which erupted during a party that Sherri Etheridge hosted for her 15-year-old daughter. The fatal incident occurred late in the evening, at an apartment complex owned by Grisham and Libby ("the landlords") and operated by their resident security manager, Clara Libby. Although Ms. Libby detected illegal alcohol use by teens at the party, observed "a number of beer cans in Ms. Etheridge's apartment" and noticed that the party had "spilled out into the parking lot and was getting loud and out of hand[,]" she did not call for police assistance as was required under her watch as resident security manager. Other than telling Ms. Etheridge to "break up the party," Ms. Libby did nothing. She instead left the apartment complex on other business. Forty-five minutes later, the teenage victim, severely impaired by alcohol, was stabbed to death when he attempted to break up a violent brawl between two other party-goers.[1]

Harry Hansen and Elaine W. Hansen, individually (as the victim's parents) and as administrators of the decedent's estate, filed this wrongful death action against the landlords and Sherri Etheridge. The Hansens filed this appeal after the trial court granted the landlords' and Sherri Etheridge's respective motions for summary judgment.

"Under [*Moon v. Homeowners' Assn. of Sibley Forest,* 202 Ga. App. 821, 822 (2), supra], a social host may be liable to an innocent guest who is injured if the host is aware of a dangerous activity going on at his party and fails to stop it." *Driver v. Leicht,* 215 Ga. App. 694, 695 (452 SE2d 165). Construing the evidence in the case sub judice most strongly against Sherri Etheridge, she not only knew her teenage daughter's friends were consuming alcohol illegally, but she closed her eyes to this illegal conduct as her daughter's party progressively went out-of-control. Under such circumstances, consider-

---

[1] Although the events in the case sub judice are hotly disputed, I enter these facts because " '[o]n appeal from the grant of a motion for summary judgment, we review the record de novo to determine if the moving party has demonstrated there is no genuine issue of material fact and the undisputed facts, construed in a light most favorable to the non-moving party, warrant judgment as a matter of law. *Gentile v. Bower,* 222 Ga. App. 736, 737 (477 SE2d 130) (1996).' *Sagon Motorhomes v. Southtrust Bank of Ga.,* 225 Ga. App. 348, 349 (484 SE2d 21) (1997)." *LPS Constr. Co. v. Ga. Dept. of Defense,* 228 Ga. App. 486, 487 (491 SE2d 920).

ing proof that the teenage victim was severely intoxicated when he stepped between two brawling party-goers, and recognizing alcohol as an unpredictable mind-altering substance — too dangerous under Georgia law for teenage consumption, I would hold that genuine issues of material fact remain as to Sherri Etheridge's alleged negligent parental conduct and supervision. *Moon v. Homeowners' Assn. of Sibley Forest*, 202 Ga. App. 821, 822 (2), supra. See *Hill v. Morrison*, 160 Ga. App. 151 (286 SE2d 467), and cits. Compare *Manuel v. Koonce*, 206 Ga. App. 582, 583 (1), 584 (b) (425 SE2d 921), and *Kappa Sigma Intl. Fraternity v. Tootle*, 221 Ga. App. 890, 893 (2) (473 SE2d 213). Further, because the landlords' security manager admitted that she observed illegal teenage drinking activities but failed to summon for police assistance, I would hold that genuine issues of material fact remain as to the landlords' liability of providing inadequate security services at their apartment complex. Such holdings not only square with the facts in this case and traditional tort law principles (as Judge Eldridge demonstrates in his dissent), but also encourages enforcement of Georgia's laws against underage drinking by placing some responsibility on adults. See *Morella v. Machu*, 563 A2d 881, 884 (N.J.Super.A.D. 1989).

I concur fully with Judge Eldridge's dissent.

ELDRIDGE, Judge, dissenting.

While I concur entirely with Presiding Judge McMurray, I suggest the following analysis that shows that the limitations of OCGA § 51-1-40 do not apply and that the third party criminal conduct was foreseeable so that the defendants' wrongful conduct were concurrent causes of the death with the acts of the killer, Patton.

The evidence raises factual issues that Sherri Etheridge engaged in various possible acts of criminal conduct in her apartment and in the apartment complex in having the party for her minor daughter: knowingly serving alcohol to minors, OCGA § 3-3-24; knowingly furnishing alcohol to an underage person, OCGA §§ 3-3-23, 3-3-23.1; contributing to the delinquency of minors, unruliness, OCGA § 16-12-1 (b) (1) delinquent act, and (2) to be an unruly child; maintaining a disorderly house, i.e., encourages drinking, other misbehavior, or common disturbance of the neighborhood or ordinary citizens, OCGA § 16-11-44. Since Ms. Etheridge knowingly engaged in criminal conduct involving others, then it was foreseeable that others would also engage in criminal conduct, fighting, arising from the drunken and disorderly circumstances created by her, a loud drunken party.

The landlord had constructive notice through the resident manager who had actual knowledge that criminal conduct on the premises was occurring, because the resident manager saw and heard such conduct both inside and outside the apartment in the parking

area and saw the empty beer cans. Instead of calling the police and waiting to see that the party was ended and the participants left peacefully, the resident manager beat a hasty retreat on the pretext that she had business off-site, abdicating her duty to keep the premises safe for those she knew were present. Where the owner and occupier of the premises has actual or constructive knowledge of the drunken conduct and condition of the persons on the premises, a duty arises to exercise ordinary care to protect those legitimately present from the risk of harm from such drunken and disorderly conduct; in this case, Ms. Etheridge and the resident manager of the landlord had actual notice of the drunkenness and disorderly conduct of the persons at the party. See OCGA § 51-3-1; *Borders v. Bd. of Trustees, V. F. W. Club 2875*, 231 Ga. App. 880 (500 SE2d 362) (1998).

OCGA § 51-1-40 was created by Ga. L. 1988, pp. 1692, 1693-1694, § 1. The descriptive title of the act reads: "To amend Chapter 1 of Title 51 of the Official Code of Georgia Annotated, relating to general tort provisions, so as to provide that certain persons shall not be liable for the acts of intoxicated persons who are of legal drinking age; to provide that certain persons may be liable for the acts of certain intoxicated persons; to provide for certain legal proofs and assumptions; to provide that under certain circumstances certain persons who own, lease, or occupy premises shall not be liable for the acts of certain intoxicated persons; to provide for certain legislative findings; to provide for related matters; to provide for applicability." Such language of OCGA § 51-1-40 is in derogation of common law that made a social host liable to third persons for furnishing alcohol to a guest who causes injury as a result of such intoxication. *Sutter v. Hutchins*, 254 Ga. 194, 195-197 (1) (327 SE2d 716) (1985).

Therefore, OCGA § 51-1-40, being in derogation of common law, must be strictly construed against the party seeking to use it as a shield from liability. *Bo Fancy Productions v. Rabun County*, 267 Ga. 341, 343 (1) (478 SE2d 373) (1996); *Johnson v. State*, 114 Ga. 790, 791 (40 SE 807) (1901). OCGA § 51-1-40 (b) seeks to deal only with tort liability from knowingly furnishing alcohol which results in injuries or death from drunk driving. *Riley v. H & H Operations*, 263 Ga. 652, 653-654 (1) (436 SE2d 659) (1993). OCGA § 51-1-40 (b) does not exclude liability against a person who furnishes alcohol to minors or underage persons with actual knowledge. *Riley v. H & H Operations*, supra at 654-655 (2). It therefore follows that a tortfeasor who furnishes alcohol to an underage person can be liable for causing such intoxication which in turn causes a tortious injury by means other than driving, because OCGA § 51-1-40 (b) only seeks to regulate liability for drunk driving, which limitation is in derogation of common law, and the "legal presumption of causation," which is a legal presumption in derogation of common law, in a strict construction of the

statute, applies only to drunk driving. Strict construction of this statute confines its exclusion from liability only to drunk driving. See generally *Sutter v. Hutchings*, supra at 196-198.

Thus, the defendants may be liable for furnishing alcohol or allowing the furnishing of alcohol to underage persons and persons visibly intoxicated, who while intoxicated are injured. *Griffin Motel Co. v. Strickland*, 223 Ga. App. 812, 814 (479 SE2d 401) (1996); see generally *Sutter v. Hutchings*, supra. Further, this Court has held that OCGA § 51-1-40 does not exclude liability under another statute that imposes tort liability, i.e., OCGA § 51-3-1. See *Eldridge v. Aronson*, 221 Ga. App. 662, 663 (1) (472 SE2d 497) (1996); *Borders v. Bd. of Trustees, VFW*, supra. OCGA § 51-1-40 (b) excludes liability where the intoxicated person injures himself but does not exclude liability where the drunk is injured by a third party, as in this case. *Griffin Motel Co. v. Strickland*, supra at 813-814.

As to causation, a fight at a drunken and disorderly party is not too remote to be reasonably foreseeable and occurred at the premises where Ms. Etheridge was supervising the party and where the resident manager had actual knowledge that the party had gotten out of hand and a duty to control the unsafe environment of the party. Ms. Etheridge caused the victim to become drunk as well as other participants in the fight, although she did not cause Patton to become drunk. Ms. Etheridge's conduct was not the proximate cause but a concurrent proximate cause; it was reasonably foreseeable that a fight would break out at this out of control party. Thus, her conduct was a concurrent proximate cause. "We therefore find that the defendant hostess and her daughter owed a duty to those [guests at the party] not to subject them to an unreasonable risk of harm by furnishing alcohol to a person under [21] who was noticeably intoxicated and who these defendants knew would [be at risk from others' wrongful conduct at the out of control party]." *Sutter v. Hutchings*, supra at 197. Likewise, the resident manager could not abdicate her duty to keep the premises safe from the conduct of mean drunks at an out of control party by leaving before the situation was made safe.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED APRIL 3, 1998 —
RECONSIDERATION DENIED MAY 4, 1998 — 

*Adams & Adams, Charles R. Adams III, Carl A. Veline, Jr.*, for appellants.

*Howard G. Sokol, Phyllis J. Holmen, Lisa J. Krisher, Martin,*

, *Snow, Grant & Napier, Thomas P. Allen III, Michael M. Smith*, for appellees.