A02A0507. SASS ENTERPRISES, INC. v. SWIFT et al.
(567 SE2d 329)

BARNES, Judge.

Sass Enterprises, Inc. appeals a trial court's order in a declaratory judgment action, contending the court erred in deciding issues that should have been arbitrated pursuant to its contract to purchase a perpetual care cemetery and pre-need dealer of burial merchandise. Because we agree that the trial court improperly decided these issues instead of permitting them to be arbitrated, we reverse.

Sass bought Bellevue Memorial Gardens, Inc. from Cecil Miller and James Swift in February 1994. The sales contract provided:

Any controversy or claim arising out of or relating to this Agreement, the Promissory Note described in Article 4, the Non-Competition Agreement or the Consulting Agreements or the breach thereof shall be settled by the following methods, in this order of priority:

(a) First, the parties shall attempt to resolve any dis-

pute through a formal mediation process, which shall be non-binding;

(b) Secondly, if mediation does not resolve the dispute, then it shall be settled by arbitration in Richmond County, Georgia in accordance with the rules then existing of the American Arbitration Association, with the parties agreeing upon one sole arbitrator who has reasonable experience in the cemetery industry;

(c) Thirdly, if the parties are unable after diligent effort to agree upon one sole arbitrator, then they shall each select an arbitrator, which arbitrators together shall agree on a third arbitrator, and the arbitration shall be conducted by the panel of three arbitrators.

Judgment upon the arbitration award rendered may be entered in any court having jurisdiction thereof. The arbitrator or arbitrators under this provision shall decide who shall pay the expenses of arbitration. Any decision made by an arbitrator or arbitrators under this provision shall be enforceable as final and binding as if it were a final decision or decree of a court of competent jurisdiction.

In November 1999, Sass notified Miller and Swift that, based on its internal audit, it believed that the company had sold products and services without reporting the sales to the Secretary of State and without putting the proceeds into escrow. The company calculated that it was entitled to offset the $415,596 balance on its promissory notes by $391,886 for undisclosed liabilities and excess interest payments on the notes.

Miller and Swift responded by requesting further information, and in March 2000, Sass gave formal notice that a dispute existed arising out of the agreement, and the parties scheduled mediation. Miller and Swift failed to attend the mediation, and after further negotiation, Sass filed a demand for arbitration with the American Arbitration Association (AAA) in July 2000. The record includes Sass's memorandum of claims, supporting evidence, and witnesses, filed with AAA pursuant to an order on preliminary hearing dated January 9, 2001. These documents outline Sass's contention that Miller and Swift deeded burial spaces, mausoleum crypts, opening and closing fees, and other burial merchandise to themselves and certain family members at no charge to the cemetery, and without escrowing any funds as required by Georgia law.

In June 2001, Miller's estate and Swift filed a complaint against Sass for declaratory judgment in Columbia County Superior Court, seeking a declaration that "the Office of the Secretary of State of Georgia is the exclusive entity to determine deficiencies, if any, in

. . . preneed accounts." The sellers argued that the following provision in the parties' sales agreement precluded Sass from conducting a "self-audit" and mandated that any audit would be performed by the Secretary of State:

> The parties recognize that the State of Georgia will not have performed audits with respect to the adequacy of the Funds in connection with this transaction prior to Closing. In the event such audits result in the determination of a deficiency in the principal of any of the Funds as of the Closing Date, Sellers shall be jointly and severally liable for and shall immediately pay such deficiency.

The sellers further noted that the Secretary of State had audited the cemetery's perpetual care trust fund and pre-need merchandise escrow fund after the sale and issued an order of settlement as well as a plan of compliance which the sellers argued addressed all the concerns that Sass sought to arbitrate.

After a hearing, the trial court held that "the Office of the Secretary of State of Georgia is the sole and exclusive determining entity of the status and sufficiency of any pre-need escrow accounts as required by OCGA § 44-3-134 et seq." The court restrained and enjoined Sass from pursuing recovery of any alleged deficiency in the pre-need escrow accounts, essentially holding that Sass has no right to arbitrate a contract dispute regarding deficiencies if the Secretary of State also has jurisdiction to determine those deficiencies. The court further held, however, that issues regarding assets transferred to sellers not in the ordinary course of business could be considered under the sales contract's arbitration provisions.

1. On appeal, Sass argues that the trial court "erred in rendering a decision as to the claims made by appellees in their complaint for declaratory judgment as the claims were and are the subject of a prior pending arbitration in which the parties had contractually agreed to submit all such claims."

"Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." *Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (2) (359 SE2d 659) (1987). The construction of an unambiguous contract is a question of law for the court. *Sagon Motorhomes v. Southtrust Bank &c.*, 225 Ga. App. 348, 349 (484 SE2d 21) (1997).

In this case, the sales contract clearly provides that the arbitration provisions apply to "*any* controversy or claim arising out of or relating to this Agreement." (Emphasis supplied.) While the contract also provides that the sellers agree to pay immediately any deficiency the Secretary of State finds in a post-sale audit, it nowhere provides

that it may not arbitrate the issue of further deficiencies, or that no right to arbitration exists if the Secretary of State has concurrent jurisdiction to determine deficiencies. In Sass's version of events, an audit by the Secretary of State would not show the deficiency now claimed, because it arises from unreported, unrecorded transfers of burial plots and merchandise. We make no conclusion regarding the validity of these claims or the effect that the Secretary of State's audit will have in the arbitration, but hold that Sass has a right to arbitrate the issue. Accordingly, the trial court erred in granting declaratory judgment to Miller and Swift regarding arbitration of any alleged escrow deficiencies. See *St. Paul Fire &c. Ins. Co. v. Barge*, 225 Ga. App. 392, 396 (5) (483 SE2d 883) (1997).

2. Our holding in Division 1 renders moot the remainder of Sass's arguments.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JUNE 18, 2002.

*Kaufman, Chaiken, Miller & Klorfein, Robert J. Kaufman, Charlotte K. Perrell*, for appellant.

*McDonald, Stiles & Thompson, John L. Thompson, Edward B. Stalnaker, Johnston, Wilkin & Williams, William J. Williams*, for appellees.