**Paul N. SMITH and Bernice Smith, Plaintiffs–Appellants,**

v.

**WAL–MART STORES, INC., Defendant–Appellee.**

No. 97–5313.

United States Court of Appeals, Sixth Circuit.

Argued April 22, 1998.

Decided Jan. 27, 1999.

Roger W. Dickson (briefed), William P. Eiselstein (argued and briefed), Miller & Martin, Chattanooga, TN, Herbert A. Thornbury (briefed), Poole, Lawrence, Thornbury, Stanley & Morgan, Chattanooga, TN, for Plaintiffs–Appellants.

Robert W. Sawser (argued and briefed), Baker, Donelson, Bearman & Caldwell, Chattanooga, TN, for Defendant–Appellee.

Before: GUY, GILMAN, and GODBOLD *, Circuit Judges.

GODBOLD, J., delivered the opinion of the court, in which GILMAN, J., joined. GUY, J. (pp. 298–99), delivered a separate opinion concurring in part and dissenting in part.

GODBOLD, Circuit Judge.

### Introductory

This diversity suit was filed by plaintiffs, residents of Georgia, in Tennessee state court against Wal–Mart Stores, Inc. to recover damages they suffered as a result of Mrs. Smith's fall in a bathroom [1] of a Wal–Mart

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. At times we use the term "bathroom," at other times "restroom." There are no bathing facilities in the room in which plaintiff fell. The terminology used in this case—in the statutes,

Store located in Fort Oglethorpe, Ga. Wal–Mart removed to the U.S. District Court, E.D. Tennessee. The parties agree that Georgia law controls. The district court granted summary judgment in favor of Wal–Mart on all of the plaintiffs' claims, and the Smiths brought this appeal.[2]

## I. Standard of Review

■ We review the district court's grant of summary judgment in favor of Wal–Mart and its subsequent order denying plaintiffs' motion pursuant to Fed.R.Civ.P. 59 and 60 to alter or amend the judgment, which together had the effect of dismissing the plaintiffs' lawsuit. Both of the district court's orders are subject to de novo review by this court, using the same standards applied by the district court. *See Middleton v. Reynolds Metals Co.*, 963 F.2d 881, 882 (6th Cir.1992) (reviewing grant of summary judgment de novo); *Columbia Gas Transmission, Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir. 1991) (applying de novo standard of review to Rule 59(e) motion seeking reconsideration of a grant of summary judgment).

■ Under Fed.R.Civ.P. 56(c) summary judgment is appropriate when there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment all reasonable factual inferences must be drawn in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 842 (6th Cir.1997). Under de novo review, we draw our own inferences and legal conclusions from the record. *Lancaster*

*Glass Corp. v. Philips ECG, Inc.*, 835 F.2d 652, 658 (6th Cir.1987).

## II. Plaintiffs' Claims

Plaintiffs allege these theories for recovery: (1) common law negligence of Wal–Mart under Georgia law for breach of its duty of care toward an invitee; (2) negligence per se under Georgia law based upon either or both of two alleged failures: (a) failure to comply with the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; and (b) failure to comply with the Fort Oglethorpe (Ga.) Building Code.[3]

## III. The Facts

As required in our review we resolve factual disputes in favor of the plaintiffs as non-moving parties and draw our own inferences from the record. The following facts appear.

Mrs. Smith, age 74, is disabled and, as a consequence of hip replacement, has required the assistance of a walker for some 10 years. On the day of her injury she and her husband entered the Wal–Mart store. He went elsewhere in the store to shop. She waited in the delicatessen, which is near the entrance. She felt the need to use the toilet. The district court stated that Mrs. Smith knew there was a handicapped-accessible restroom. To the contrary, the evidence before the court tends to show that she did not know of the handicapped-accessible bathroom. We are not referred to evidence in the record that supports the court's conclusion. In her video deposition taken November 9, 1995, p. 7, Mrs. Smith testified that she did not know there was another restroom at the rear of the store. At p. 14 she repeated that answer. In her husband's deposition taken October 10, 1996, p. 20, he testified that his wife was "never back there"

---

regulations, complaint, and summary judgment proceedings—is not uniform. No substantive consequence springs from our use of more than one descriptive term.

2. For simplicity we refer at times to the plaintiffs in the singular, at other times to the plaintiff as Mrs. Smith, recognizing that both she and her husband are claimants.

3. There are references by the parties and the district court to provisions of Georgia statutes

concerning the number and location of handicapped-accessible bathrooms. Ga.Code Ann. § 30–3–2(1)(C) (Supp.1996) and American National Standards Institute model building code, requiring a handicapped-accessible facility "at a reasonable location." Plaintiffs' complaint does not assert violation of the state statutes as negligence per se. Location of restrooms may, however, be a component of the claim of violation of common law standards for negligence that require the premises owner to exercise due care to keep the premises safe. *See* Part IV, *infra*.

[where the handicapped-accessible bathroom was located]. After the district court's decision granting summary judgment, plaintiffs' counsel filed an affidavit by Mrs. Smith in which she swore that she did not know there was a handicapped-accessible bathroom at the rear of the store, and if [in her deposition] she had said that there was such a bathroom it was because she was using a borrowed hearing aid which did not assist her hearing well and she did not understand what was asked. She thought that the question referred to her knowledge on the day of the deposition. The affidavit stated that she had reviewed her video deposition and the response given in it was correct. There is no clear contradiction. If there is, it presents an issue of fact to be determined by a factfinder.

■ The district court held: "Mrs. Smith does not say that she could not have made it to the handicapped-accessible restroom in the rear of the store, or even to her own home. Rather, she says she chose to use this restroom because her husband was ready to leave. Therefore, the choice of restrooms was motivated by convenience, and not by any particular exigency or distraction." J.A. at 180. The court erred. Mrs. Smith's affidavit states that her need was such that she would not have made it to the restroom at the back of the store or to her own home. J.A. at 223. This was a disputed material issue of fact, and on consideration of summary judgment her statement had to be accepted as true.

Mrs. Smith went to the ladies' restroom located near the deli, and near the store entrance. It had in it one bathroom stall with its own door that swings inward. The bathroom did not meet handicapped-accessible standards of ADA because the stall was not wide enough to accommodate Mrs. Smith's walker and permit her to turn around within the stall. Also, there were no handrails ("grab bars") in the stall. Another bathroom is located on the same floor, near the layaway department at the rear of the store, some 140 yards from the front entrance. It meets handicapped-accessible standards of ADA. It would require a "pretty long time" for a person on a walker to go to

the back of the store where the handicap-accessible bathroom is located. A maintenance employee had received complaints about the front bathroom not being handicapped-accessible and had told management about this. There were no signs at or near the front bathroom directing disabled users to the bathroom at the rear. Wal–Mart had received complaints from customers about the inaccessibility of the rear bathroom, and Wal–Mart was aware that disabled persons sometimes used the front bathroom. Mrs. Smith had used the front bathroom less than five times in the past without incident. An employee testified that every day he saw handicapped shoppers in the store, some in wheelchairs, others using walkers. With respect to comparative knowledge by Mrs. Smith and Wal–Mart of risks of the bathroom, an employee was asked to identify persons responsible for ADA compliance and risk management, and he responded that they were too numerous to name.

Mrs. Smith left her walker outside the stall and entered. She did not notice then, nor had she noticed when previously using the bathroom, that there were no grab bars. She did not anticipate that she would need something to hold on to, and therefore did not perceive any danger to herself from the lack of grab bars. While arising from the toilet Mrs. Smith lost her balance from an unknown cause and fell. She did not slip in any liquid or on any obstruction but simply lost her balance. Falling forward, she grabbed for support but found none. She tried to grab the toilet paper dispenser but it was loose. She grabbed for the door latch, but it was broken or missing. She fell forward, striking the stall door, which opened, and then she fell outwards against the outside wall facing the stall. The fall broke her neck, and she is now a quadriplegic confined to a nursing home.

■ Mrs. Smith's knowledge of the condition of the bathroom is a relevant issue. The district court found that she *could* apprehend its condition at a glance, and *"[s]he did so, and chose* to use the restroom regardless of its lack of handrails." J.A. at 177. These findings, however, involve disputed material facts. There is no evidence that Mrs. Smith

*could* apprehend the conditions at a glance, that *in fact* she did so, and that *in fact* she chose to use the restroom regardless of its lack of handrails. These conclusions were not supported by evidence.

A central issue concerns the absence of handholds (grab bars) within the stall and the conformation of the stall—whether it was too narrow for plaintiff to enter with her walker and to move about within the stall with her walker. The district court held as a matter of law that the front bathroom was "indisputably safe," and that the evidence was "plain, palpable and indisputable" that there were no hazards. It also held as a matter of law that, in the front bathroom, the amount of space in the stall that made it impossible for plaintiff to utilize her walker, and the lack of grab bars, were not defects at all.

A finder of fact could conclude that a general merchandise store like Wal–Mart could anticipate use of the front bathroom by a full range of customers with a wide range of needs, including handicapped persons. A Wal–Mart employee testified that on the average he would see several handicapped persons a day shopping at the store. Handholds are a familiar appurtenance in public bathrooms, potentially useful to all users who must enter and depart the stall. Their function is not limited to availability to persons who are falling. They may be useful to persons who may be arranging or rearranging clothing and who may be moving from standing to sitting or sitting to standing and buttoning or unbuttoning clothing; to persons who need help in standing or sitting or moving about, including persons who require the assistance of a walker; and to males who stand while urinating. Handholds have special utility for the elderly and infirm who may need both available support and the assurance of their presence and availability. They are useful to children who may be uncertain in their use of public restrooms. Wal–Mart could anticipate that among its invitees would be disabled persons using walkers who would need access to a stall and, once inside, grab bars and space in which to utilize their walkers. One may assume that Wal–Mart's employees were regularly cleaning and maintaining the restroom. Mrs. Smith was on the premises as a time-to-time retail shopper.

The court erred in holding as a matter of law that the absence of grab bars and the conformation of the stall were not defects at all, and that the front bathroom was indisputably safe, and that the evidence was "plain, palpable and indisputable" that there were no hazards. It erred in concluding that Wal–Mart was in no better position than Mrs. Smith to judge the risks of the restroom. J.A. at 177.

■ This brings us to the issue of distraction. Mrs. Smith had a duty to exercise care for her own safety. This implicated whether she was distracted by her needs and the circumstances of meeting those needs and, if she was distracted, the termination of the distraction. The district court held that her need was not of sufficient magnitude to be distracting. The court's view of this highly personal matter was contrary to Mrs. Smith's affidavit describing her need. Moreover, the court found that even if she had been distracted the distraction was ended when she rose from the toilet and fell. When the distraction ended, however, is a matter more appropriate for a jury.

For the reasons we have set out summary judgment for Wal–Mart was incorrectly granted. We turn to consideration of the causes of action asserted by plaintiff.

## IV. Common Law Negligence

■ In Georgia the duty of an owner or occupier of land is statutory:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

Ga.Code Ann. § 51–3–1. In some cases the plaintiff's own negligence may bar or reduce his or her recovery:

> If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the

defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.

Ga.Code Ann. § 51–11–7.

■■■■ Count II is the common law negligence count. It alleges: (1) failure to use ordinary care in the location of the handicapped restroom; (2) failure to equip the front restroom with grab bars; (3) failure to equip the door of that restroom with a workable lock; and (4) breach of a duty, stated in generalized terms, to inspect its restrooms to make them safe for invitees. Though it was not specifically alleged, the district court recognized that plaintiff also complained that the restroom stall was too narrow to accommodate a walker, and it considered and ruled upon that matter. It was tried by consent.[4] We have described in Part III that a finder of fact could conclude that Wal–Mart could anticipate the use of grab bars and an appropriate stall by invitees like the plaintiff. Without dispute plaintiff was an invitee. Whether Wal–Mart's failure to maintain grab bars and a stall suitable for persons like plaintiff, and its location of the handicapped-accessible restroom some 140 yards from the store entrance and without signs directing disabled persons to it, considered singly or cumulatively, constituted negligence for failure to keep the premises safe as required by § 51–3–1 was a matter for a jury. *See Brown v. Who's Three, Inc.*, 217 Ga.App. 131, 457 S.E.2d 186, 192–93 (Ga.Ct.App.1995), which held "[t]he occupier of a business premises has a duty to exercise ordinary care in keeping the premises safe. This includes a duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises.... Whether the table was deficient and whether the deficiency caused [plaintiff's] injuries is for a jury's determination." (internal quotations and citations omitted). The plaintiffs in the instant case sufficiently alleged a cause of action for common law negligence. Whether Wal–Mart committed breaches of duty alleged to have been committed by it and whether such failures proximately caused injuries to plaintiffs is for jury determination.

## V. Negligence Per Se

In Count I plaintiffs assert a cause of action for negligence per se based upon alleged violations by Wal–Mart of provisions of ADA and provisions of the Standard Building Code of Fort Oglethorpe (Ga.). We consider separately these alleged bases for negligence per se.

### (1) Failure to comply with ADA

The district court held as a matter of law that plaintiffs could not proceed under a per se negligence theory of Georgia law based upon violation of ADA, which does not grant a private cause of action for failure to comply with its requirements.

Initially the district court held that ADA had no relation to the case because the Wal–Mart store was built in 1991 before ADA was enacted. Subsequently, in its order on plaintiffs' motion to alter and amend the judgment, it receded from that position and recognized that the Act required that architectural barriers in existing buildings be removed under prescribed circumstances:

(a) *General.* A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 C.F.R. § 36.304(a). Examples of barrier removal include installing grab bars in toilet stalls, 28 C.F.R. § 36.304(b)(12), and rearranging toilet partitions to increase maneuvering space, § 36.304(b)(13).

The ADA Accessibility Guidelines for Buildings and Facilities, App. A to 28 C.F.R. § 36, § A4.26.1 provides: "Many disabled people rely heavily on grab bars and handrails to maintain balance and prevent serious falls."

The absence of grab bars did not cause Mrs. Smith's fall but rather were unavailable

---

4. The parties do not discuss the duty to inspect, nor do we. Also, at times plaintiffs refer to the latch as loose and at times they refer to the latch as missing.

to help her maintain her balance and avoid the consequences.

The district court granted summary judgment on the ADA-based claims on the ground that Congress provided no damages remedy for violation of Title III of ADA. Rather the enforcement statute is 42 U.S.C. § 12188, which incorporates the remedies of 42 U.S.C. § 2000a–3(a), and that section does not include money damages.[5] And, the court reasoned, to use ADA as the basis for a negligence per se claim would create a damages remedy in every state allowing negligence per se recovery, and the court had found no state cases allowing such a remedy.

■ A state can incorporate requirements of federal law into its law or, to put it differently, it may be held that the federal law impliedly provides a private cause of action under state law for individuals harmed by violation of the federal statute. *Coalition for Health Concern v. LWD, Inc.,* 60 F.3d 1188, 1194 (6th Cir.1995) (incorporation of federal Resource Conservation and Recovery Act in Kentucky hazardous waste law); *Wren v. Sullivan Elec. Inc.,* 797 F.2d 323, 325–26 (6th Cir.1986) (rules of construction provided in OSHA regulations incorporated into Tennessee law). Georgia has not expressly incorporated ADA. Wal–Mart had, however, established a task force to implement the accessibility requirements of ADA. Br. of Appellant at 7; J.A. at 123.

■ By statute, Georgia addresses the right of a party to recover for injuries when no cause of action expressly exists.

> When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.

Ga.Code Ann. § 51–1–6. Also relevant is § 51–3–1, *supra,* Georgia's general statute concerning the duty of the owner or occupier of land to an invitee. ADA contains no provision barring application of it as the basis for

a state cause of action. Nor is there any mention in § 51–1–6 that an injured person must have a private cause of action under the statute in order for it to be used to establish a duty of care.

In *Manley v. Gwinnett Place Assocs., L.P.,* 216 Ga.App. 379, 454 S.E.2d 577 (1995), *overruled on other grounds, Flournoy v. Hospital Auth.,* 232 Ga.App. 791, 504 S.E.2d 198 (1998), plaintiff fell on a handicapped access ramp leading from a parking lot to a shopping mall. The court granted summary judgment for the mall. The Court of Appeals considered whether ADA applied and held that it did not establish negligence or entitle plaintiff to recover.

> As to the ADA, "OCGA § 51–1–6 provides for recovery of damages upon breach of a legal duty and specifies that the requirement under the law to perform or refrain from doing an act must be for the benefit of the injured person." *Dupree,* supra, 199 Ga.App. at 141, 404 S.E.2d 291. To recover on a claim of breach of statutory duty, the person claiming the breach must be within the class for whose benefit the statute was enacted. *Spivey v. Sellers,* 185 Ga.App. 241, 244, 363 S.E.2d 856 (1987). Clearly, Manley was not in the class of persons for whose benefit the Americans With Disabilities Act was enacted, since she was not disabled.

*Id.* at 579. This at least implied that under Georgia law ADA could be the basis for a breach of duty. The plaintiff was just not within the protected class. In the present case the court rejected *Manley* by applying the "equal knowledge" rule, that is, that the alleged defects in the ramp were open, obvious and static and thus could have been discovered by the plaintiff. The court did not address the primary holding of *Manley* that plaintiff was not within the class of persons intended to be protected by ADA.

*Johnson v. Kimberly Clark,* 233 Ga.App. 508, 504 S.E.2d 536 (Ga.Ct.App.1998), concerned a plaintiff employed by an independent contractor to paint iron poles on Kimberly Clark's premises. One of the poles fell

---

5. Section 12188(b) permits money damages to an aggrieved person but only in a discrimination case brought by the Attorney General.

on him. The trial court granted summary judgment for Kimberly Clark. The Court of Appeals reversed because there were issues of fact as to the acts and knowledge of Kimberly Clark's employees and of whether control of the premises had been surrendered to the independent contractor, and of plaintiff's exercise of care for his own safety, so that material issues of disputed fact remained for the jury. Significant to the present case is the holding that negligence per se did not apply since plaintiff was not an employee of Kimberly Clark, but if Kimberly Clark had actual or constructive knowledge (for purposes of OSHA) then it also had knowledge for purposes of § 51–3–1, *supra*, the general statute concerning the duty of a landowner to invitee. "Thus, if there was an OSHA violation ... Kimberly Clark was under an affirmative OSHA duty to periodically inspect and to see that work and walk surfaces were unobstructed, which duty was owed to its employees." *Id.* at 539.[6] *See also Rouse v. CSX Transp., Inc.*, 722 F.Supp. 751, 753 (S.D.Ga.1989), holding that under Georgia law plaintiff may proceed against a railroad pursuant to the Safety Appliance Act, 45 U.S.C. § 1 (1910), which does not provide for a private cause of action. Plaintiff was held to be a member of the class protected by the Act and therefore could invoke the Act's absolute liability standard. It held as a matter of law that the car which injured plaintiff, as required by the Act, was "on the line" of the railroad for purposes of the Act when the accident occurred, and it granted plaintiff's motion for partial summary judgment as to the applicability of the Act.

■ It is relevant to the issue of incorporation of ADA that Georgia has its own statutory system providing for access to and use of public facilities by disabled persons. The policy of Georgia is set out in the statute.

[T]o further the policy of the State of Georgia to encourage and enable persons with disabilities or elderly persons to participate fully in the social and economic life

of Georgia and to encourage and promote their education and rehabilitation. It is the intent of this chapter to eliminate, insofar as possible, unnecessary physical barriers encountered by persons with disabilities or elderly persons whose ability to participate in the social and economic life of this state is needlessly restricted when such persons cannot readily use government buildings, public buildings, and facilities used by the public.

Ga.Code Ann. § 30–3–1. Violation of the statute or regulations is a misdemeanor. Ga. Code Ann. § 30–3–8. Any provision affording greater access than required by federal law is to be fully effective. Ga.Code Ann. § 30–3–9(a). This statute does not create a cause of action. We have been referred to no cases citing the statute and explicitly or implicitly recognizing a private cause of action for violation of it. Enforcement of the Georgia statute is left to government entities, including the Fire Safety Commissioner. Ga. Code Ann. § 30–3–7.

The effect in the present case of Georgia's policy relating to facilities for the handicapped can be rationally argued in opposing ways. On the one hand the Georgia statute may evidence a Georgia policy against any private right of action, since it includes no such right. Or the absence of a statutory private right of action may imply that Georgia intends that an ADA-based state law action is to fill the need for a private remedy. Or, Georgia may intend that federal and state remedies co-exist. *See Keith v. Beard*, 219 Ga.App. 190, 464 S.E.2d 633, 636 (Ga.Ct. App.1995) and Ga.Code Ann. § 51–1–6, neither of which the district court considered.

We have examined several factors that seem to us relevant to incorporation, including: the absence of a private party damages remedy in ADA, the effect of Georgia's own statutory system for access to public facilities, ADA's goals of protecting the disabled and establishing standards addressing discrimination against them, and Georgia's standards for deciding whether it will interpret a statute as constituting negligence per se.

---

6. Dissent on the ground that there was no evidence of superior knowledge by defendant, so that changes in evidentiary burdens made by

*Robinson v. Kroger Co.*, 268 Ga. 735, 493 S.E.2d 403 (Ga.1997), did not affect the case.

Taking all this into account, we believe that if the Georgia Supreme Court were faced with the facts of this case, it would conclude (1) that whether Wal–Mart was in violation of the ADA by not installing grab bars in the toilet stall used by plaintiff, and thus was negligent per se, is a question for the jury, and (2) that Mrs. Smith has a private right of action against Wal–Mart under Georgia law for its failure to implement any ADA-mandated requirements designed for the protection of persons such as herself.

### (2) Failure to Comply with the Building Code of the City

■ Plaintiffs assert a cause of action for negligence per se based upon alleged failure of Wal–Mart to comply with the 1988 Standard Building Code as adopted by the City of Fort Oglethorpe. Wal–Mart contended that its duties to handicapped persons relating to its building were governed by the Georgia statute, Ga.Code Ann. § 30–3–4(3) (1993). Plaintiffs sought to bring themselves within the more stringent requirements of the Building Code. The Building Code, § 508, relates to accessibility of buildings to the handicapped. It contains an exception providing that its requirements do not apply "[w]hen a code jurisdiction is using mandated handicapped requirements." The district court held that the state statute, § 30–3–4(3), is such a mandated handicapped requirement, therefore the exception prevails over the City Code provision. We therefore need not reach the issue of the allegedly higher requirements of the Building Code.

■ Plaintiffs say that the district court should have allowed an expert engineer to testify that the City Code governed. This interpretation of the city and state building codes is a matter of law for resolution by the court and not a proper subject for testimony from at least that of a non-lawyer. The court did not err.

### VI. Application of the Equal Knowledge Rule and *Robinson v. Kroger Co.*

We have set out above § 51–3–1, which governs the responsibility of the owner of land to an invitee. However, § 51–11–7 provides for a defense in tort actions in general:

If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.

■ Prior to the decision of *Robinson v. Kroger Co.*, 268 Ga. 735, 493 S.E.2d 403 (Ga.1997), as a consequence of the language of *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327 (1980), and *Lau's Corp., Inc. v. Haskins*, 261 Ga. 491, 405 S.E.2d 474 (1991), a premises liability plaintiff faced with a motion for summary judgment was required to show that the owner had knowledge of the hazard and that the plaintiff was without knowledge of it despite the exercise of ordinary care, or for some reason attributable to the defendant was prevented from discovering it. In effect, for the plaintiff to avoid summary judgment he had the burden of proving the defendant's actual or constructive knowledge and his own lack of negligence in order to stay in court. The responsibility of the defendant was "placed in the shadows" and most cases were decided on the basis of failure of the plaintiff to come forward with sufficient evidence of his lack of negligence. *Robinson*, 493 S.E.2d at 413.

*Robinson* was a watershed case concerning substance, burden of proof, and use of summary judgment. The Supreme Court of Georgia reformulated the evidentiary burdens of a plaintiff faced with a motion for summary judgment. The court held that after it was established that the defendant was negligent (by having knowledge of the existence of a hazard on its premises) the defendant must come forward with evidence of plaintiff's negligence and only after if had done so was plaintiff required to produce rebuttal evidence. The plaintiff's burden of evidentiary proof was not placed upon him until the defendant had established negligence on plaintiff's part.

The court also held that an invitee presented some evidence of his exercise of reasonable care when he explained that something in the control of the owner was of such nature that the owner knew or should have

known of its distractive quality that caused the invitee not to look at the site of the hazard. Also the court softened the "distraction doctrine" involving proof by the plaintiff of a matter causing plaintiff not to discover or apprehend danger because of circumstances created by the defendant.

In *Robinson* the Supreme Court took another significant action. The court sent out a reminder to the members of the judiciary concerning the issues in premises liability cases:

> In sum, we remind members of the judiciary that the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed. We hold that an invitee's failure to exercise ordinary care is not established as a matter of law by the invitee's admission that he did not look at the site on which he placed his foot or that he could have seen the hazard had he visually examined the floor before taking the step which led to his downfall. Rather, the issue is whether, taking into account all the circumstances existing at the time and place of the fall, the invitee exercised the prudence the ordinarily careful person would use in a like situation.

493 S.E.2d at 414.

Wal–Mart makes a back-up argument that, even if *Robinson* applies, the summary judgment for defendant must stand because the district court found there was no hazard and that the restroom was "indisputably safe," found that plaintiff could apprehend the condition of the restroom at a glance and in fact did so and in fact made a choice to use it despite absence of handrails, and found that the distraction of needing to relieve herself was insufficient, and overall found that the evidence was "plain, palpable and indisputable." These findings are matters that, as we have pointed out, involve disposition of disputed material issues of fact that could not properly be decided on summary judgment.

Two other premises liability cases deserve mention, for they involve failure of the defendant to provide legally mandated safety devices that might have prevented plaintiff's injuries. Plaintiffs knew the devices were absent but summary judgment for defendants was held inappropriate because plaintiffs did not have knowledge superior to that of the owners on whose safety protection plaintiff was entitled to rely. In *Holbrook v. Executive Conference Ctr., Inc.*, 219 Ga.App. 104, 464 S.E.2d 398 (Ga.Ct.App.1995), a child nearly drowned in a swimming pool that lacked a statutorily mandated "life line" separating the deep end of the pool from the shallow end. The child testified that he knew that there was no life line, and that he entered the pool with no intention of entering the deep end of the pool but merely intended to swim the length of the shallow end. That was his last conscious thought before he was resuscitated, and there was no evidence as to how he came to be in the deep end of the pool. On these facts the court held that summary judgment was inappropriate. Though the child knew where the deep end of the pool was located and that there was no life line, the court held that he did not have superior knowledge of the hazard as compared to the owner of the pool. The court reasoned that the very purpose of the life line was to protect the bather who might suddenly need the life line, regardless of whether the bather entered the water voluntarily. *Holbrook*, 464 S.E.2d at 402.

In *Mozley v. Beers Constr. Co.*, 97 Ga.App. 217, 102 S.E.2d 645 (Ga.Ct.App.1958), the plaintiff was a construction worker injured when he stepped backwards through a hole in the floor of a building under construction. The court held that plaintiff had demonstrated evidence that he had exercised ordinary care for his own safety, given that "the plaintiff had a right to rely upon the defendants obeying the mandate of the law." *Mozley*, 102 S.E.2d at 648. *Robinson*, in a decision similar to *Holbrook* and *Mozley*, held that the invitee's duty to exercise ordinary care for her own safety should be examined in light of the landowner's duty to exercise good business practices in making the premises safe, having expressly invited customers to come onto the premises with the implicit representation that reasonable care has been

exercised to make them safe. *Robinson,* 493 S.E.2d at 409. Moreover the court in *Robinson* held that an invitee presented some evidence of his exercise of reasonable care when he explained that something in the control of the owner was of such a nature that the owner knew or should have known of its distractive quality that caused the invitee not to look at the site of the hazard. *Id.* at 412.

█ In the present case the decision of the district court was handed down February 6, 1997. The order of the court denying plaintiff's motion to alter or amend judgment was entered April 4, 1997. The Georgia Supreme Court decided *Robinson* on December 3, 1997. The parties differ as to its scope. We must decide whether it applies to the present case. Wal–Mart, recognizing the import of *Robinson,* contends that the decision is limited to slip-and-fall cases and thus is not applicable to this case.

█ The issues in premises liability cases in general are basically the same as in the particularized genre of slip-and-fall. There must be a hazard, proximate cause and injury, actual or implied knowledge by the defendant of the hazard, and due care by the invitee to protect himself. Whether plaintiff in a premises liability case slips on a banana peel and falls, collides with an immobile iron post, is struck by a bucket moved by crane, or falls and is the victim of a hazard consisting of the absence of equipment to prevent her from falling or protects her from the act of falling, the central issues are the same. *Robinson's* reminder by the court to the judiciary is cast in appropriate terms—it addresses the " 'routine' issues of premises liability." *Id.* at 414. *Robinson* is not limited to slip-and-fall cases. We hold that *Robinson* applies.

The impact of *Robinson* on Georgia law is demonstrated by the fact that as of the time of preparation of this opinion it has been cited in some 67 decisions of the Court of Appeals and the Georgia Supreme Court. Several of these are general premises liability cases that are not slip-and-fall cases. *General Manufactured Hous., Inc. v. Murray,* 233 Ga.App. 382, 504 S.E.2d 220, 222 (Ga.Ct.App.1998) (affirming judgment on jury verdict for plumber who fell through skylight); *Davis v. GBR Properties, Inc.,* 233 Ga.App. 550, 504 S.E.2d 204, 206 (1998) (reversing for jury determination of whether ramp was unsafe, whether patient knew or should have known of hazard posed by ramp's handrail, and whether she intentionally and unreasonably exposed herself to hazard by walking down ramp); *Stevens v. Sears, Roebuck & Co.,* 232 Ga.App. 99, 501 S.E.2d 279, 280 (1998) (reversing for jury determination of whether customer's injury from defendant's machinery was caused solely by her failure to exercise care for her own safety or by the negligence of the machine operator); *Borders v. Board of Trustees,* 231 Ga.App. 880, 500 S.E.2d 362, 365 (1998) (reversing for trial of claim brought by social patron injured at dance when fellow patron staggered into her and knocked her to the floor because *Robinson* shifted burden of proof), *cert. denied,* (Ga. Sept. 11, 1998).

Others are slip-and-fall cases but speak of *Robinson* in broader terms. *Steele v. Rosehaven Chapel, Inc.,* 233 Ga.App. 853, 505 S.E.2d 245, 247 (Ga.Ct.App.1998) (affirming summary judgment because "[e]ven after *Robinson,* supra, in a premises liability action, a defendant can prevail on summary judgment for pointing to the absence of evidence as to an essential element of plaintiff's prima facie case").

*Robinson* has even been cited in cases which do not involve premises liability. *Anderson v. Flake,* 270 Ga. 141, 508 S.E.2d 650 (1998) (voter challenged whether elected superior court judge met residency requirements); *Farmer v. Brannan Auto Parts, Inc.,* 231 Ga.App. 353, 498 S.E.2d 583, 856, 589 (1998) (products liability case involving explosion of tire sealant), *cert. denied,* (Ga. June 26, 1998); *Sellers v. Air Therm Co., Inc.,* 231 Ga.App. 305, 498 S.E.2d 167, 170 (Eldridge, J., dissenting) (hit-and-run case), *cert. denied,* (Ga. June 26, 1998).

## VII. Summary

The judgment of the district court is AFFIRMED with respect to plaintiffs' claim of negligence per se based on an alleged failure to comply with the Fort Oglethorpe Building Code.

The judgment of the district court is RE-VERSED and REMANDED for further proceedings with respect to plaintiffs' claims of common law negligence and negligence per se based on an alleged failure to comply with ADA. The decision of the Supreme Court of Georgia in *Robinson v. Kroger Co.,* 268 Ga. 735, 493 S.E.2d 403 (Ga.1997), shall be applied to this case upon remand.

GUY, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the conclusions reached by the court, except for the conclusion reached in Part V(2) that the district court did not err in finding the Fort Oglethorpe building code to be inapplicable.

My disagreement with the court can be simply stated: I agree with Judge Edgar's conclusion that

[w]hen boiled down to its essentials, this is not a close case. Wal–Mart was not in any better position than Mrs. Smith to judge the "danger" of the restroom for Mrs. Smith. In fact, Mrs. Smith was far better informed than Wal–Mart as to her own physical abilities. If she chose to use the restroom in the delicatessen despite the fact that it lacked handrails, there was nothing Wal–Mart could have done—short of making all of its restrooms handicapped-accessible, which it was clearly not obligated to do—that could have prevented this accident. Georgia statutory law does not require that all restrooms be handicapped-accessible, as discussed in the previous section of this opinion. Nor is such a rule evident in the case law. As such, the question is whether Wal–Mart "exercised ordinary care in keeping the premises and approaches safe."

The restroom was indisputably safe. The broken handle on the stall door and the broken toilet paper holder cannot be viewed as creating an unreasonably unsafe condition. The handle is for opening and shutting the door, the toilet paper holder for dispensing tissue. Neither is designed to substitute for grab rails, and although their failure to function in that manner might create an inconvenience, it does not give rise to liability. There is no evidence that there were any other conditions in the restroom that would have rendered it unreasonably unsafe, such as slippery or broken tiles, poor lighting, clutter on the floor, or the like. The only safety "defects" alleged by the plaintiffs are the amount of space in the stall and the lack of grab rails. However, these are not in fact defects at all in the context of a non-handicapped-accessible restroom. Furthermore, Wal–Mart was under no duty to make this particular restroom handicapped-accessible.

The import of the majority's holding is that a jury is free at any time to conclude that a defendant is negligent not only if every public toilet but also every stall in every public toilet is not equipped with grip bars and otherwise made handicapped-accessible. This same misfortune that occurred here could have occurred if the plaintiff had gone into a restroom with a handicapped stall, but its stall was occupied when she wanted to use it, and so she used another stall.

Similarly, I again agree with Judge Edgar's conclusion that the reasonableness of the location of the handicapped facility did not present a jury question.

In such a situation, it is impossible to say that any location in the Wal–Mart store was any more reasonable than any other. If Wal–Mart had chosen to locate the handicapped-accessible restroom up front, then she would have had quicker access to it. Would then a handicapped customer in the rear of the store, suddenly overcome with the need to use the restroom, have a cause of action because he chose to use a closer, non-handicapped restroom rather than making the trek back to the front of the store? The statutes do not require multiple handicapped-access restrooms to be scattered through the store, or that all restrooms to which the public has access be handicapped-accessible. Because the choice of placement for the handicapped-accessible restroom was reasonable as a matter of law, Wal–Mart was not in violation of the access statutes. Therefore, as a matter of law, the negligence *per se* claim must fail.

Finally, I find the extended discussion of *Robinson v. Kroger Co.,* 268 Ga. 735, 493 S.E.2d 403 (Ga.1997), to be unnecessary and irrelevant. To begin with, *Robinson* was a slip and fall case, even if it has been quoted in subsequent cases not involving slips and falls. More importantly for me, however, this is not a case that turns on whether or *not* plaintiff should have used greater care for her own safety in discovering a defect. This is a case, in my view, in which there was no defect.

I would affirm the judgment of the district court.