**Mary SIEKANIEC, Plaintiff–Appellant,**

v.

**COLUMBIA GAS COMPANY,
Defendant–Appellee.**

No. 01–3206.

United States Court of Appeals,
Sixth Circuit.

Oct. 4, 2002.

Before GUY, SILER, and BATCHELDER, Circuit Judges.

PER CURIAM.

Plaintiff Mary Siekaniec appeals the district court's grant of summary judgment to Defendant Columbia Gas on her claim under the Americans with Disabilities Act (ADA). We AFFIRM.

I.

In 1982, Siekaniec began working as a dispatcher for Columbia Gas. The dis-

patcher receives incoming calls, assigns priority to them, and then dispatches the needed instructions, information, or assistance. For emergency and fire calls, the dispatcher will dispatch other Columbia Gas employees to the scene, and communicate with police and fire departments to respond to questions and relay information. Siekaniec suffered from migraine headaches throughout her employment and in 1996 began to suffer from chronic headaches. The chronic headaches would occur from one to eight times each month. Beginning in 1996, Siekaniec's headaches (both kinds) began to interfere with her attendance at work. When Siekaniec could not work because of her debilitating headaches, Columbia Gas called in another dispatcher to cover her shift. Siekaniec received written warnings concerning her attendance on three occasions: June 19, 1996; February 17, 1997; and August 29, 1997. On November 13, 1997, while working the afternoon/evening shift, she overlooked a priority call and failed to process it for over two hours.

From January 2, 1998 to May 1, 1998, Columbia Gas placed Siekaniec on paid medical leave. On June 16, 1998, it informed Siekaniec that she could not serve as a dispatcher, but gave her three months additional medical leave to apply for other jobs at Columbia Gas. On October 9, 1998, Columbia Gas terminated Siekaniec.

Siekaniec filed suit in the Northern District of Ohio, seeking to recover under the ADA, Title VII, FMLA, and state law claims. The district court granted Columbia Gas's motion for summary judgment on all claims. Siekaniec appeals only her ADA claim.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *See Smith v. Wal–Mart Stores, Inc.,* 167 F.3d 286, 289 (6th Cir.1999). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The general ADA rule regarding employee discharge is that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C. § 12112(a). The term "discriminate" includes

[n]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]

42 U.S.C. § 12112(b)(5)(A).

More specifically:

In cases in which the plaintiff is seeking some accommodation on the part of the employer, and is claiming that he or she would be qualified to perform the essential functions of the job with such reasonable accommodation, the disputed issues will be whether such accommodation is reasonable, whether such accommodation would impose an undue hardship on the employer, and/or whether the plaintiff is capable of performing the job even with the suggested accommodation, each of which may also be resolved through direct, objective evidence.

* * *

The language of this provision makes it clear that the employer has the burden of persuasion on whether an accommo-

dation would impose an undue hardship [on that particular employer]. However, the disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable [to employers generally].

*Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1183–84 (6th Cir.1996).

For a reasonable accommodation, Siekaniec proposes the "on-call" system, that Columbia Gas call one of the other dispatchers into work whenever a headache prevents her from coming to work or staying at work. She argues that the "on-call" system reasonably accommodated her headaches for the first thirteen years of her employment. This court will not assume that Columbia Gas's handling of Siekaniec's absences for the first thirteen years of her employment constitutes a "reasonable accommodation." At best, it was a reasonable accommodation, but at worst the on-call system in place at the time may have been a horrible mistake (e.g., had the November 13, 1997 call been more serious). Regardless, the question before the court is what is a reasonable accommodation for her current medical state. The last two years of Siekaniec's employment were marked by increased absenteeism and increased frequency of debilitating headaches.[1]

Although, as Siekaniec argues, one should not presume that uninterrupted attendance in all instances is a mandatory job requirement, *see Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775 (6th Cir.1998), both the unpredictable nature of Siekaniec's absences and the safety critical nature of the dispatcher job make regular attendance an essential part of the dispatcher job.

Given the safety critical nature of the dispatcher job, it is unreasonable to require an employer to use the on-call system to accommodate the frequent headaches that Siekaniec may suffer from. Moreover, the requested reasonable accommodation—using the on-call list—does not resolve the safety problem which occurs when Siekaniec's headaches begin during her shift.

Even if the on-call system provides a reasonable accommodation for employers generally, this accommodation imposes an undue hardship on Columbia Gas.[2] Before November 1, 1997, three dispatchers were potentially available to cover for Siekaniec when she suffered a headache; after November 1, 1997, only two dispatchers are potentially available to cover for Siekaniec when she suffers a headache. Without proclaiming a specific cut-off, the court finds that given the size of the dispatcher staff at Columbia Gas, the requested ac-

1. Siekaniec has attempted to create an issue of fact regarding the frequency of debilitating headaches by filing an affidavit as follows:

> My condition in early January, 1998, when I was cleared to return to work after going on leave in December, 1997 was no worse than it had been from 1982 through my November, 1997 leave of absence.

Siekaniec filed this statement in response to Columbia Gas's motion for summary judgment, and the statement contradicts her earlier deposition testimony that the frequency of her headaches increased with the onset of her chronic headaches in 1996. As noted in this

circuit, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir.1986).

2. Columbia Gas argues that the November 1997 workforce reduction is another reason that Siekaniec failed to carry her "reasonableness" burden. The relevance of the workforce size is better analyzed under "undue hardship," as it is a factor specific to Columbia Gas's situation.

commodation would impose an undue hardship.

AFFIRMED.