NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0264n.06
Filed: April 9, 2007

No. 06-1662

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOHN ALEXANDER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| THOMAS BIRKETT, Warden, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before: COLE, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge. John Alexander appeals the district court's dismissal of his petition for habeas corpus as untimely. We agree that the petition was untimely and thus affirm.

I

Michigan convicted Alexander of second-degree murder and sentenced him to life with the possibility of parole on March 25, 1981. At that time, Michigan parole policy would permit a prisoner sentenced to life in prison with the possibility of parole to be eligible for parole in as few as ten years. But according to Alexander's federal petition, that parole policy stiffened thereafter. In 1992, responding to highly publicized violent crimes committed by parolees, Michigan reorganized its parole board in an effort to boost its political accountability. The new board cracked down on parole for life sentences, adopting a philosophy that life in prison means life. In 1999, the

Michigan legislature eliminated a requirement that the parole board interview prisoners sentenced to life every five years. Also in 1999, the chairman of the parole board testified that the new board had a "longstanding philosophy" that "a life sentence means just that—life in prison." In 2001, the spokesman for the Michigan Department of Corrections (MDOC) publicly stated that "life means life." Also in 2001, MDOC distributed a document to the Michigan Judges Association explaining that the "parole board believes a life sentence means life in prison."

Pertinent to the timeliness issue here is Alexander's November 26, 2002, filing of his third motion for relief from judgment in state court, arguing that 1) the parole board's life-means-life policy violates the Ex Post Facto Clause as applied to him, and 2) he was deprived of due process because the trial judge sentenced him under a misconception that he would be parolable. Some four months later, on March 13, 2003, Judge Sapala, the trial judge who sentenced Alexander in 1981, held a hearing and granted Alexander's motion. The Michigan Court of Appeals reversed Judge Sapala shortly thereafter, on July 15, 2003, and the Michigan Supreme Court denied leave to appeal on March 25, 2004. Alexander then sought federal review by filing his habeas petition on October 8, 2004. The district court granted the warden's motion for summary judgment, holding that Alexander's petition was untimely. Following the denial of his motion for reconsideration, Alexander appealed.

II

No. 06-1662
*Alexander v. Birkett*

We review de novo both the grant of and the denial of a motion to reconsider summary judgment. *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999).

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a prisoner to file his federal habeas petition on or before one year after "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Furthermore, the statute of limitations is tolled during the time "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). For both Alexander's Ex Post Facto Clause and Due Process Clause claims, the factual predicate is the alleged change in the parole board's policy.

To measure the petition's timeliness, we count backward from the date Alexander filed his federal habeas petition, October 8, 2004. And tolling precludes charging him with the time during which his third state petition for relief was pending, from November 26, 2002, to March 25, 2004. Working backward from October 8, if Alexander could have discovered the factual predicate for his claim *on or before* June 11, 2002, it is time-barred. (We count 168 days between June 11, 2002, and November 26, 2002; 197 days between March 25, 2004, and October 8, 2004; and 197 + 168 = 365.) If he could not have discovered the factual predicate until *after* June 11, 2002, the statute of limitations had not expired by October 8, 2004.

Alexander insists that he could not have discovered the factual predicate for his federal claims until he heard Judge Sapala say at his hearing on March 13, 2003, "it's only now that we see what the Parole Board is doing." Belying his stance, however, is the plain fact that Alexander set forth these same Ex Post Facto Clause and Due Process Clause claims in his November 2002 motion in state court. And even if we assume Alexander did not actually know of his claims until he filed them in November 2002, as his counsel stated at oral argument, actual knowledge is not the test under § 2244(d)(1)(D). Rather, under this section, a federal habeas claim accrues when a petitioner could have discovered it through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D); *see also Souter v. Jones*, 395 F.3d 577, 586-87 (6th Cir. 2005).

The litany of facts going back to 1992 included in Alexander's habeas petition convinces us that his petition was untimely. The petition details the changes in parole policy forming the basis for his claim: the 1992 reorganization of the parole board, the 1999 elimination of five-year review, the 1999 testimony by the chairman of the parole board, the 2001 statement by the MDOC spokesman, the 2001 official materials stating that life means life, and various statistics showing that life-eligible prisoners were paroled much less frequently in the 1990s than before. We need not peg with certainty the exact date on which Alexander's claims accrued. But we can say, as evidenced by his own habeas petition, that Alexander could have discovered, through the exercise of due diligence, the factual predicate for his claims before June 2002. His October 2004 petition was untimely.

III

For these reasons, we affirm.