*621 TEXTO COMPLETO DE LA SENTENCIA
Enid Espinar Cruz (apelante Espinar) nos solicita que revoquemos la Sentencia dictada por el Tribunal de Primera Instancia, Sala de Mayagüez (TPI), que desestimó su demanda presentada contra Avis Car Rental, Inc., Avis Car Rental, John Doe y Jane Doe (Avis).
I
La apelante Espinar presentó una demanda contra Avis por alegado trato discriminatorio cuando intentó alquilar un automóvil en las oficinas de esta empresa, ubicadas en el Aeropuerto de Mayagüez, “el 20 ó 30 de marzo de 2004”. Alegó que Avis discriminó contra ella por causa de un impedimento visual que le imposibilita conducir vehículos de motor en horas de la noche. Tal restricción se la impuso el Departamento de Transportación y Obras Públicas de Puerto Rico y así surge de su licencia de conducir.
La apelante Espinar adujo textualmente en su demanda que Avis discriminó contra ella en contravención de la Ley Federal conocida como ADA, por sus siglas en inglés. Esta es la única fuente legal en la que fundamentó su reclamación. Para sostener su causa de acción, alegó lo siguiente:

“2. Que en fecha del 20 ó 30 de marzo de 2004, la parte demandante solicitó y obtuvo reservación, en Avis.

3. Que dicha reservación fue gestionada para el uso de un automóvil.

4. Que la reservación tiene número 31272536.

5. Que dicha reservación fue autorizada y emitida por las oficinas de Avis localizadas en el aeropuerto de Mayagüez del Municipio de Mayagüez, Puerto Rico.

6. Que la demandante (sic) personó en las oficinas de Avis, del aeropuerto de Mayagüez, para recoger su unidad.

7. Que a la demandante le fue requerida su licencia de conducir así como (sic) tarjeta de crédito.

8. Que su tarjeta de crédito fue procesada.

9. Que el personal de AVIS, al ver la licencia de conducir, observó que la misma tiene (sic) restricciones.

10. Que la licencia de conducir de la demandante restringe su uso durante horas de la noche y ello por problemas de visión en un ojo.

10. (sic) Que la demandante explicó que usaría el vehículo durante el día.

*622
11. Que AVIS no alquiló el vehículo a la demandante.

12. Que dicha acción, por parte de AVIS, (sic) basada exclusivamente en la restricción antes mencionada.

13. Que la demandada, AVIS, ha discriminado contra la demandante por razón de incapacidad.

14. Que dicho discrimen es vedado por (sic) Ley Federal conocida como ADA, por sus siglas en inglés.

15. Que la demandante ha sido discriminada y por ello AVIS (sic) ha causado daños emocionales estimados en CIENTO VEINTICINCO MIL DÓLARES ($125,000.00). ”

Ante este escenario, el 18 de mayo de 2006, Avis sometió una Moción de Desestimación. Sostuvo que las alegaciones de la apelante Espinar no configuraban una reclamación por discrimen, pues la condición visual que le impide conducir de noche no la hace un individuo incapacitado al amparo de la Ley ADA. Atendida la posición de ambas partes, el 16 de agosto de 2006, el TPI denegó la Moción de Desestimación.
El 31 de mayo de 2007, Avis presentó la Contestación a la Demanda. En ésta, tras negar todas las alegaciones hechas en su contra, Avis presentó, entre otras, las siguientes defensas afirmativas: 1. que la Ley ADA no es aplicable al caso que nos ocupa; 2. que la demanda no aduce hechos que justifiquen la concesión de un remedio; y 3. que la demanda se encuentra prescrita.
Así las cosas, el 9 de octubre de 2007, luego dé transcurrir dos años de la presentacjón de la demanda (10 de noviembre de 2005) y más de tres años de ocurrir los hechos (30 de marzo de 2004), la apelante Espinar solicitó enmendar las alegaciones para ampliarlas o aclararlas. En su moción expresó que:

“2. En la [demanda] se hacen unas alegaciones que deseamos aclarar más a fondo.

3. Por tal razón, solicitamos autorización del Honorable Tribunal para proceder a enmendar la demanda no a fines de cambiar las alegaciones o a hacer alegaciones nuevas, sino más bien para aclarar las que fueron hechas. ”

En una primera moción informativa de esa misma fecha, que acompañó con una declaración jurada de la apelante Espinar, su representante legal señaló que:

“3. En conversaciones con la parte demandante, ha surgido una información que desconocíamos en el momento de radicarse la demanda, pero que aclara las alegaciones hechas en la misma. ”

Finalmente, en otra moción informativa presentada en igual fecha, la apelante Espinar añadió que:
“10. Por otro lado, entendemos que en el presente caso hubo un contrato, ya que la demandada fue a la oficina de Avis a recoger el vehículo y allí le procesaron su tarjeta de crédito y luego le entregaron la llave.

11. No fue hasta que le explicaron dónde era que: se encontraba el vehículo que entonces ¡e pidieron ver su licencia.

12. Por tanto, hubo un contrato y el término prescriptivo de la causa de acción de epígrafe bajo la Ley ADA es, de quince (15) años, ya que la propia Ley ADA no establece un término prescriptito, sino que más bien dispone que se utilizará el que disponga la ley estatal para casos similares. ”

Inconforme, el 29 de octubre de 2007, Avis se opuso a la solicitud de la apelante Espinar. Sostuvo que ésta *623 era tardía, pues ya se habían levantado las defensas de ausencia de causa de acción y de prescripción.
Atendidos los planteamientos de ambas partes, el 15 de noviembre de 2007, el TPI declaró No Ha Lugar la solicitud de enmienda; determinación que fue confirmada por el Tribunal de Apelaciones mediante Resolución emitida el 6 de junio de 2008 en el caso número KLCE-2008-00563.
Entretanto, el 13 de marzo de 2008, Avis presentó una Moción de Sentencia Sumaria. Alegó que la reclamación de la apelante Espinar estaba prescrita, toda vez que fue presentada a un año y ocho meses después del incidente en que se originó la demanda. Sostuvo que la Ley ADA no dispone un límite estatutario para la presentación de una causa de acción por discrimen, por lo que debía observarse el término prescriptivo más análogo por daños personales del estado donde ocurrieron los hechos, que en nuestra jurisdicción es de un año, según surge del Artículo 1802 del Código Civil, 31 L.P.R.A. §5141. Además, reiteró sus alegaciones de que la apelante Espinar no estaba protegida por las disposiciones de la Ley ADA.
El 13 de mayo de 2008, la apelante Espinar se opuso a la moción de sentencia sumaria y argumentó que antes de pedirle la licencia de conducir, la empleada de Avis procesó su tarjeta de crédito y le entregó la llave del vehículo, siendo luego que procedió a examinar su licencia de conducir, configurándose así la existencia de una obligación contractual a la cual le era aplicable el término prescriptivo de quince (15) años contemplado en el Artículo 1864 del Código Civil, 31 L.P.R.A. § 5294.
Sin embargo, dicho planteamiento no fue acogido por el TPI, el cual, el 5 de junio de 2008, dictó una sentencia desestimando la reclamación de la apelada Espinar. Esta se fundamentó en dos conclusiones: 1. que la reclamación de discrimen en violación a la Ley ADA estaba prescrita, pues se presentó pasados seis meses del término prescriptivo de un año para presentar una demanda por daños y perjuicios; y 2. que la condición de no poder conducir de noche nó hacía de la apelante Espinar una persona incapacitada protegida por las disposiciones de la Ley ADA, pues como cuestión derecho, la apelada no está impedida de realizar una actividad de central importancia en la vida diaria.
Inconforme, la apelante Espinar presentó el recurso que nos ocupa, alegando que:

"Erró el Tribunal de Primera Instancia, Sala Superior de Mayagüez, al dictar Sentencia Sumaria desestimando la demanda de epígrafe alegando que independientemente del término prescriptivo, la [apelante Espinar] no podía reclamar un derecho bajo la Ley ADA debido a que no estaba protegida por las disposiciones de la Ley Federal. ”

Con el beneficio de la comparecencia de ambas partes, nos disponemos a resolver.
II
La Ley para Personas con Incapacidades (Americans With Disabilities Act of 1990, Pub. L. 101 - 336, 104 Stat. 327, July 26, 1990, 42 U.S.C. § 12201, et seq.) (Ley ADA), les concede protecciones de sus derechos civiles a personas con incapacidades, parecidas a las que se les conceden a las personas de acuerdo con su raza, color de piel, sexo, nación de origen, edad y religión. 42 U.S.C. § 12201. Su propósito es garantizar la igualdad de oportunidades para las personas con incapacidades en los empleos (reglamentado por el Título I de la Ley ADA), los servicios gubernamentales estatales y locales (reglamentado por la Parte A del Título II de la Ley ADA), el transporte (reglamentado por la Parte B del Título II de la Ley ADA), las oportunidades en los establecimientos privados que prestan servicios al público (reglamentado por el Título III de la Ley ADA) y las telecomunicaciones (codificado en 47 U.S.C §§ 225 y 611).
Según definido por la Ley ADA, una persona con incapacidades es alguien con una incapacidad física o mental que le limita considerablemente una o más actividades vitales primordiales; o con historial de dicha *624 incapacidad; o que es visto como si tuviera tal incapacidad. [1] 42 U.S.C. § 12102. Entre los ejemplos de incapacidades físicas o mentales están las enfermedades contagiosas y no contagiosas y enfermedades como las incapacidades ortopédicas, visuales, del habla y auditivos; parálisis cerebral, epilepsia, distrofia muscular, esclerosis múltiple, cáncer, enfermedades del corazón, diabetes, retraso mental, enfermedades emocionales, incapacidades de aprendizaje específicas, SIDA (ya sea sintomático o asintomático) y tuberculosis. [2] 28 CFR 36.104. Entre las "actividades vitales primordiales" se encuentran las funciones como el cuidarse uno mismo, las tareas manuales, ver, escuchar, comer, dormir, caminar, estar de pie, levantar objetos, doblarse, hablar, respirar, aprender, leer, concentrarse, pensar, comunicarse y trabajar. [3]
El Título II de la Ley ADA prohíbe la discriminación de individuos calificados con incapacidades en todos los programas, actividades y servicios de entidades públicas. Las entidades públicas incluyen a los gobiernos locales y estatales y cualquiera de sus departamentos, agencias y demás oficinas. [4] 42 U.S.C. § 12131.
El Título III de la Ley ADA se aplica a las entidades privadas que operan establecimientos públicos. Esto es, toda entidad privada que posee, opera, alquila o toma en alquiler un lugar para prestar servicios al público. Entre los establecimientos de servicio público existe una amplia variedad de entidades, como hoteles, restaurantes, teatros, comercios dedicados a la venta o alquiler de bienes y servicios, consultorios médicos, farmacias, museos, bibliotecas, parques, escuelas privadas y guarderías infantiles. [5] 42 U.S.C. § 12182. Los clubes privados y las organizaciones religiosas están exentos de los requerimientos del Título III de la Ley ADA para los establecimientos de servicio público. 42 U.S.C. § 12187.
Al proporcionar bienes y servicios, un establecimiento público no puede usar requisitos de derecho que excluyan o segreguen a personas con incapacidades, a menos que los requisitos sean necesarios para la operación del establecimiento público. [6] 42 USC § 12182. Se pueden imponer requisitos de seguridad solamente si son necesarios para la operación segura de un establecimiento público. Estos tienen que basarse en riesgos verdaderos y no en meras especulaciones, estereotipos o generalizaciones sobre personas con incapacidades. [7] 42 U.S.C. 12182.
. Un establecimiento público debe hacer modificaciones razonables a sus políticas, prácticas y procedimientos para dar facilidades a personas con incapacidades. No se requiere una modificación si "alterara fundamentalmente" los bienes, servicios u operaciones del establecimiento público. 42 U.S.C. § 12182.
Las partes privadas pueden entablar una demanda para que, mediante un remedio interdictal, el tribunal ordene que cese la discriminación, pero no se obtendrá dinero por daños con tales demandas. Solamente se les podrá otorgar honorarios razonables de abogado, más las costas del litigio. 42 U.S.C § 12205.
Sin embargo, las personas privadas también pueden interponer denuncias ante el Secretario de Justicia- de los Estados Unidos, quien tiene la autorización de entablar demandas en casos de importancia pública general o cuando se afirme que existe un "patrón o práctica" discriminatoria. En este escenario, el Tribunal podrá otorgar dinero por daños (a excepción de daños punitivos) y sanciones civiles. Según el estatuto, las sanciones civiles no pueden exceder los $50,000 por una primera contravención o $100,000 por cualquier contravención posterior. 42 U.S.C. § 12188.
Apliquemos los criterios reseñados al caso de autos.
III
En el caso de epígrafe nos corresponde determinar, particularmente, si el TPI abusó de su discreción al acoger y declarar Con Lugar la solicitud de sentencia sumaria presentada por Avis.
La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36, permite y regula los criterios para la *625 adjudicación sumaria de una controversia, previa solicitud de parte. Específicamente, la Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.3, establece que para que proceda la disposición sumaria de una reclamación, el promovente debe demostrar: (1) que no hay controversia esencial en cuanto a los hechos relevantes, y (2) que la cuestión de derecho a resolver permite dictar la sentencia sumariamente. Para ello, el tribunal deberá examinar si de los documentos que obran en el expediente (alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, así como declaraciones juradas de las partes, si las hubiere), surge que no hay controversia real sustancial en cuanto a hecho alguno, por lo que sólo resta resolver las controversias de derecho del caso sin necesidad de celebrar una vista evidenciaría. Id. Tal norma fue reiterada en Freire v. Vista Rent, res. el 9 de noviembre de 2006, 169 D.P.R._(2006), 2006 JTS 172.
El mecanismo de sentencia sumaria sólo debe utilizarse cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que el promovido no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba. Cualquier duda en torno a ese aspecto debe resolverse a favor de la celebración de un juicio plenario. Id.
Según lo expresado por el Tribunal Supremo (TSPR), “el principio rector que debe guiar al juzgador en la determinación sobre si procede o no la sentencia sumaria es el sabio discernimiento, ya que mal utilizada, puede prestarse para privar a un litigante de su ‘día en corte’, principio elemental del debido proceso de ley”. Cruz v. Sánchez, res. el 8 de noviembre de 2007, 172 D.P.R._(2007), 2007 JTS 203. Por lo dicho, no procede resolver un caso sumariamente cuando el tribunal no tiene certeza sobre todos los hechos relevantes a la controversia. Id.
Además, el tribunal sentenciador, en el sano ejercicio de su discreción, debe abstenerse de resolver mediante el mecanismo de sentencia sumaria controversias en las que subyacen elementos subjetivos de intención, propósitos mentales o negligencia, y cuando el factor credibilidad sea esencial para dirimir los conflictos de la prueba. Rivera v. Rivera, res. el 20 de junio de 2006, 168 D.P.R._(2006), 2006 JTS 112.
El TSPR ha requerido a los foros de primera instancia prudencia y mesura en el uso de la sentencia sumaria y los ha intimado a ejercer su discreción de manera responsable e informada. Como foro apelativo, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea tenemos dos limitaciones: primero, sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y, segundo, sólo podemos determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde al foro de primera instancia, facultad que está cobijada por el ejercicio de su sana discreción. Vera v. Dr. Bravo, 161 D.P.R. 308, 334 (2004).
La apelada Espinar alega como razón para solicitar que revoquemos el dictamen recurrido, que erró el TPI al determinar que ésta no podía reclamar un derecho bajo la Ley ADA debido a que no estaba protegida por sus disposiciones. Como hemos expresado, el TPI concluyó en su sentencia que la condición de no poder conducir de noche no hacía de la apelante Espinar una persona incapacitada protegida por las disposiciones de la Ley ADA, pues como cuestión de derecho ésta no estaba impedida de realizar una actividad de central importancia en la vida diaria. Además, el TPI resolvió que la causa de acción por daños y perjuicios estaba prescrita a la fecha de su presentación.
Advertimos, sin embargo, que de nuestro análisis de la Ley ADA se desprende claramente que las personas con incapacidades que presentan una causa de acción por alegadas transgresiones al Título III de ese estatuto solamente disponen de remedios interdíctales, no así de un remedio que les compense económicamente por los daños y perjuicios experimentados. Así ha sido interpretado reiteradamente en los foros estatales y federales. Por ejemplo, en:

*626
“Zona v. Clark University, 436 F. Supp.2d 287 (D. Massachusetts 2006), un estudiante universitario demandó a, entre otros, su entrenador de béisbol, por los alegados daños y perjuicios que le causó la revelación de su desorden bipolar a los demás estudiantes. La Corte de Distrito resolvió que sólo los remedios interdíctales, no la compensación monetaria por daños, están disponibles como remedio por violaciones al Título III de la Ley ADA;

Woods v. Wills, 400 F. Supp. 2d 1145 (D. Missouri 2005), un grupo de estudiantes y sus padres demandaron por daños y perjuicios a los administradores de un internado por alegadas violaciones al Título III de la Ley ADA. La Corte de Distrito resolvió que el remedio monetario por daños no está disponible bajo las disposiciones del Título III de la Ley ADA;

Hobleman v. Kentucky Fried Chicken, KFC, 260 F. Supp. 2d 801 (D. Nebraska 2003), un minusválido en silla de ruedas demandó por daños y perjuicios a los dueños y arrendatarios de un restaurante de comida rápida, alegando que la planta física del lugar incumplía con las guías de acceso correspondientes a la Ley ADA. La Corte de Distrito resolvió que el Título III de la Ley ADA no provee como remedio la compensación monetaria cuando quien interpone la acción es la persona discriminada;

Spychalsky v. Sullivan, (D. New York 2003) Unreported, 2003 WL 22071602, affirmed 96 Fed.Appx. 790, 2004 WL 1157714, la corte resolvió que el remedio de compensación por daños y perjuicios no está disponible para el demandante que lleva una causa de acción privada por contravención de las disposiciones del Título III de la Ley ADA;

Wander v. Kaus, 304 F.3d 856 (9th Cir. 2002), un consumidor cuadraplégico demandó en daños y perjuicios a los dueños de un comercio buscando una compensación bajo el Título III de la Ley ADA. El Tribunal de Apelaciones resolvió que la intención del Congreso fue claramente que no existiera una causa de acción en daños y perjuicios por violaciones al Título III de la Ley ADA;

Sigros v. Walt Disney World, Co., 190 F.Supp. 2d 165 (D. Massachusetts 2002), un cliente de un complejo turístico que resultó lesionada cuando su silla de ruedas se estrelló contra la parte inferior de una rampa, demandó en daños y perjuicios a dicho complejo, alegando violaciones a la Ley ADA. La Corte de Distrito resolvió que la compensación económica por daños y perjuicios no está disponible a los demandantes que interponen una acción privada bajo las disposiciones del Título III de la Ley ADA;
Dorsey v. City of Detroit, 157 F.Supp.2d 729 (D. Michigan 2001), un golfista demandó en daños y perjuicios a los propietarios de un campo de golf privado por alegadas violaciones a la Ley ADA, sustentadas en haberle negado acceso, provocándole humillación y angustias emocionales. La Corte de Distrito resolvió que no se es beneficiario de un remedio en daños y perjuicios causados por alegadas violaciones al Título III de la Ley ADA;
Cole v. National Collegiate Athletic Association, 120 F.Supp.2d 1060 (D. Georgia 2000), un estudiante demandó en daños y perjuicios a una asociación universitaria de atletismo y otros, alegando que la política de participación de la asociación violaba las disposiciones de la Ley ADA. La Corte de Distrito resolvió que la compensación económica no es un remedio disponible bajo las disposiciones de la Ley ADA, cuando se alegue que sus disposiciones han sido incumplidas por una entidad privada que opera un establecimiento público;

Smith v. Wal-Mart Stores, Inc. 167 F.3d 286, 293 (6th Cir. 1999), el Tribunal reconoció que el estatuto que dispone el cumplimiento del Título III de la Ley ADA, 42 U.S.C. § 2000a-3(a), no incluye remedios económicos en compensación de daños y perjuicios sufridos;

Adelman v. Acme Markets Corp., 15 A.D.D. 859 (D. Pennsylvania 1996), un incapacitado demandó en daños y 
*627
perjuicios a una tienda de comestibles por alegadas violaciones a la Ley ADA respecto a su necesidad de servicio. La Corte de Distrito resolvió que el Título III de la Ley ADA no autoriza reclamaciones por individuos particulares por alegados daños y perjuicios, sino que provee exclusivamente remedios interdictóles y honorarios de abogado. ”

Cónsono a lo anterior, tratándose el caso que nos ocupa de una acción fundamentada exclusivamente en las disposiciones del Título III de la Ley ADA, donde se solicita la compensación de los daños emocionales causados por el alegado discrimen de Avis contra la apelante Espinar, ha quedado demostrado que ésta no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba. Es por ello que confirmamos la Sentencia dictada el 5 de junio de 2008 por él TPI.
IV
De existir algún remedio a favor de la apelante Espinar en virtud de las disposiciones del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. §5141, su reclamación estaría prescrita. El término prescriptivo para esas causas de acción es de un año, 31 L.P.R.A. §5298. La demanda debió haber sido presentada en marzo de 2005, pero se presentó el 10 de noviembre de 2005, aproximadamente ocho (8) meses después.
V
Por los fundamentos expresados, se confirma la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 5

1. El inciso (2) de la Seo. 12102 de la Ley ADA lee:

"The term "disability" means, with respect to an individual:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such impairment. ”

2. La Sec. 36.104 del Code of Federal Regulations dispone que para efectos de la Ley ADA, la frase incapacidad física o mental (physical or mental impairment) significa:

“(i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine;

(ii) Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities;

(Hi) The phrase physical or mental impairment includes, but is not limited to, such contagious and noncontagious diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism;

*628
(iv) The phrase physical or mental impairment does not include homosexuality or bisexuality. ”

3. El ADA Amendments Act of 2008, Pub. L. 110-325, Sept. 25, 2008, provee que efectivo al 1 de enero de 2009, la See. 12102 de la Ley ADA ha sido enmendada para que, entre otros, su inciso (2) incluya la definición de “actividades vitales primordiales” (major life activities), como:

“(A) In general

For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B)Major bodily functions

For purposes of paragraph (I), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.”

4. La Ley ADA no se aplica al poder ejecutivo del gobierno federal. El poder ejecutivo sigue rigiéndose por el Título V de la Ley de Rehabilitación de 1973, que prohíbe la discriminación en la prestación de servicios y el empleo debido a una incapacidad y que es el modelo de las exigencias de la Ley ADA. No obstante, la Ley ADA sí se aplica al Congreso y a otras entidades del poder legislativo del gobierno federal. 42 U.S.C § 12209.

5. La See. 12181 de la Ley ADA dispone:

“The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce:

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than-five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

*629
(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

6. El inciso (a) de la Sec. 12182 de la Ley ADA, titulada Prohibition of discrimination by public accommodations, lee:

“No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. ”

7. El inciso (b)(3) de la Sec. 12182 de la Ley ADA lee:

“Nothing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others. The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services. ”